FLOYD E. MAXSON, APPELLANT, V. MICHAEL TODD & CO., INC.,
APPELLEE.

469 N.W.2d 542

Filed May 24, 1991.    No. 90-342.

Michael J. Lehan, of Kelley, Kelley & Lehan, P.C., for appellant.

Michael K. High and Richard D. Sievers, of Bruckner, O'Gara, Keating, Sievers & Hendry, P.C., for appellee.

HASTINGS, C.J., WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ., and COLWELL, D.J., Retired.

CAPORALE, J.

The plaintiff-appellant employee, Floyd E. Maxson, challenges the dismissal of his action for workers' compensation benefits from the defendant-appellee employer, Michael Todd & Co., Inc. He asserts, in summary, that the tribunal below erred in concluding the evidence failed to establish that he sustained a loss of earning power as the result of either an accident or occupational disease which arose out of and in the course of his employment. We affirm.

In his petition Maxson alleged that he, on March 18, 1988, sustained personal injuries and disability as the result of repeated trauma and strain over a substantial period of time from activity required by his employment.

Maxson was born on December 25, 1940, has a high school education, and has engaged in very heavy work during most of his working life. The record shows him to be an honest and stoic man with an excellent work history and a highly developed

work ethic.

After working in construction for 3 or 4 years, followed by a 3-year stint in the Army, during which period he worked as a diesel and gas mechanic, Maxson in 1970 started working for Todd, which is engaged in the business of supplying construction equipment repair parts. Maxson's duties throughout the 18 years he worked for Todd as a combined shipping, receiving, and warehouse worker required him to unload trucks and to otherwise stoop, bend, lift, climb, and reach. For a period of time, he was not provided with a forklift, and he, with but the help of a "two-wheeler," moved and otherwise worked on items weighing up to 1,000 pounds.

In the earlier years of his employment with Todd, but not during the last half decade, Maxson worked part time for two other employers. For one he drove a truck and checked the condition of construction barricades, and for the other he pumped gasoline.

Throughout the period of his employment with Todd, Maxson experienced back, shoulder, and arm discomfort, which he treated with rest, heat, and analgesics. The discomfort became progressively more severe, especially during the last 5 years, and in 1987 he was hospitalized for back discomfort. Other than during that period of hospitalization, Maxson continued to treat his condition in much the same way as he had in earlier years.

In January 1988, Maxson underwent a routine physical examination by an internist. At this time Maxson complained of a painful shoulder and back, conditions which were exacerbated by heavy lifting and bending. Examination revealed that he had an irregular heartbeat, and the internist referred him to an orthopedist and a heart specialist.

The orthopedist concluded that Maxson suffers from a combination of musculoskeletal problems, including degenerative lumbar spondylosis, probably some neurogenic claudication secondary to lateral recessed spinal stenosis, a degenerative problem in his right shoulder suggestive of a rotator cuff tear, and lateral epicondylitis on his right elbow. This physician also expressed the view that Maxson's shoulder complaints were aggravated, if not directly caused, by repeated

heavy lifting and the fact that he was " 'hit by a can' " in 1985 or 1986. The orthopedist also opined that the heavy lifting required by his employment aggravated, but probably did not solely cause, his degenerative back problems. In the orthopedist's view, sedentary activities are preferable, with lifting limited to slightly above waist level. The orthopedist also observed that as Maxson's conditions are progressive, it seems unlikely he will be released to return to unrestricted warehouse-type activities.

In the internist's opinion, the repeated lifting and bending during the course of Maxson's employment with Todd caused his shoulder and elbow problems and caused or aggravated his back condition. The internist is of the additional view that Maxson is not now able to lift. According to Maxson, the cardiologist also advised that he not lift more than 20 or 25 pounds.

On March 22, 1988, Todd delivered a letter to Maxson, thanking him for his "excellent and loyal service" and terminating his employment because he could no longer perform the required duties. Maxson last worked for Todd on the preceding Friday, March 18, 1988.

Maxson thereafter studied automated accounting in a 3-month program of vocational rehabilitation. As a result, he learned to perform some automated accounting tasks, use a 10-key adder by touch, and type at a rate of approximately 25 to 30 words per minute. At the time of trial he was employed by a drugstore, performing automated accounting work at a salary of about half of his earnings at Todd.

According to a rehabilitation counselor, Maxson has sustained a 60-percent-total reduction of earning power, 50 percent due to his back condition. However, the counselor is also of the view that Maxson's heart condition alone produces a 50-percent loss of earning power.

Neb. Rev. Stat. § 48-151(2) (Reissue 1988) defines "accident," unless a different meaning is clearly indicated by the context, as "an unexpected or unforeseen injury happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury." "Occupational disease" is defined by § 48-151(3) as meaning

"only a disease which is due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation, process, or employment and shall exclude all ordinary diseases of life to which the general public is exposed." Although the statute does not define "disease," the term is generally understood to mean

> an impairment of the normal state of the living animal or plant body or of any of its components that interrupts or modifies the performance of the vital functions, being a response to environmental factors (as malnutrition, industrial hazards, or climate), to specific infective agents (as worms, bacteria, or viruses), to inherent defects of the organism (as various genetic anomalies), or to combinations of these factors.

Webster's Third New International Dictionary, Unabridged 648 (1981).

While it is thus quite clear that a condition resulting from the cumulative effects of repeated work-related trauma has some characteristics of both an accidental injury and an occupational disease, this court has concluded that the compensability of such a condition is to be tested under the statutory definition of accident. *Crosby v. American Stores*, 207 Neb. 251, 298 N.W.2d 157 (1980).

As noted earlier, within the purview of § 48-151(2) an accident takes place when an injury occurs "suddenly and violently," which, at the time, produces "objective symptoms." We have held that the sudden and violent requirement is met "if the injury occurs at an identifiable point in time requiring the employee to discontinue employment and seek medical treatment." *Sandel v. Packaging Co. of America*, 211 Neb. 149, 158, 317 N.W.2d 910, 916 (1982). Thus, in *Sandel* this court held evidence that the employee's arm began to swell at 11:30 on a particular morning as the result of approximately 5 months of repeated work-related flexion and extension of her arm supported the compensation court's finding of an accidental injury arising out of and in the course of her employment. In so ruling, the *Sandel* court noted that the immediacy of the onset of symptoms which required the employee to stop work and seek medical attention distinguished the case from those

instances involving chronic conditions which developed over a period of years and could not be traced to a particular activity. Accord, *Hayes v. A.M. Cohron, Inc.*, 224 Neb. 579, 400 N.W.2d 244 (1987), *disapproved on other grounds, Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990) (repeated kneeling over an approximately 2-month period resulting in sudden onset of pain while lifting, for which employee sought medical attention the following day and later terminated her employment, supported finding of accidental injury); *Masters v. Iowa Beef Processors*, 220 Neb. 835, 374 N.W.2d 21 (1985) (snap in hand, seeking of medical attention, and employer termination of relationship, all occurring within 17 days of employment involving repeated pulling motion, supported finding of accidental injury); *McLaughlin v. Self-Insurance Servs.*, 219 Neb. 260, 361 N.W.2d 585 (1985) (evidence symptoms developed over $2^1/2$-hour period following snap in elbow after 9 years of repetitive arm and hand movements, for which employee sought medical aid and which required temporary cessation of employment, supported finding of accidental injury); *Erving v. Tri-Con Industries*, 210 Neb. 339, 314 N.W.2d 253 (1982) (pain and numbness in hand developing after approximately 4 months of repeated crimping requiring discontinuance of employment and medical treatment supported finding of accidental injury); *Crosby v. American Stores, supra* (evidence symptoms developed in 1 day as result of repeated striking of hands and became progressively worse in succeeding 5 to 10 days, after which period employee sought medical aid, supported finding of accidental injury).

Thus, the tribunal below correctly concluded the cumulative effects of repeated work-related trauma which do not at an identifiable moment produce objective symptoms requiring, within a reasonably limited period of time, medical attention and the interruption or discontinuance of employment are not the product of an accidental injury within the purview of § 48-151(2).

AFFIRMED.

GRANT, J., dissenting.

I respectfully dissent. This is obviously a close case, but it appears to me that in affirming the judgment of the

compensation court, we are diluting our holding in *Sandel v. Packaging Co. of America*, 211 Neb. 149, 317 N.W.2d 910 (1982). In *Sandel* we stated, referring to the work of "[t]he noted workmen's compensation authority, Larson," as follows:

In 1B Larson, Workmen's Compensation Law § 39.49 (1980), Larson suggests that the occurrence of pain and the need for medical attention is sufficient to designate the occurring of an accident "suddenly and violently" even though the initial effect of the pain and the subsequent injury may have been much earlier and simply continued to build until it reached the point at which the employee could no longer perform the required work.

*Sandel, supra* at 161, 317 N.W.2d at 917.

Later, in *Hayes v. A.M. Cohron, Inc.*, 224 Neb. 579, 582, 400 N.W.2d 244, 246 (1987), we stated that "in Nebraska the definition of 'accident,' as used in Neb. Rev. Stat. § 48-101 (Reissue 1984), includes injuries resulting from activities which create a series of repeated traumas ultimately producing disability."

In this case, plaintiff, while seeing his doctor for what plaintiff describes as "a routine physical," told the doctor that his shoulder, elbow, and back had been "more sore lately than it ever has been, and my shoulder hurt, and my back was giving me problems . . . ."

The doctor sent plaintiff to an orthopedic surgeon. Plaintiff further testified: "[H]e told me that all the discs in my back were flatting [sic], and that I've got a torn rotator cuff in my shoulder, and he said I had to — couldn't be lifting the heavy stuff anymore because my back was out."

The internist who examined plaintiff stated in his report:

It's hard to say that he may not have had some degenerative arthritis of his spine given time, but I certainly feel that the wear and tear of heavy lifting have hastened progress, aggravated the situation, and now he is at the point where he is unable to lift, or in fact do much bending over without a tremendous amount of low back pain.

In other words, it seems to me that a hard, conscientious worker just keeps working until the worker reaches "the point

where he [or she] is unable to lift." That point should be sufficient to constitute an accident in the same manner a carpal tunnel or "tennis elbow" injury results in a compensable accident.

This plaintiff's injury may be likened to "tennis elbow" or carpal tunnel injuries, such as those in *Sandel v. Packaging Co. of America, supra,* and in *Crosby v. American Stores,* 207 Neb. 251, 298 N.W.2d 157 (1980). The obvious difference is that it took this worker longer to break down than it took the plaintiffs in those cases. I do not think, however, we should, in effect, punish the tough worker who does not drop to the floor in pain and grab his or her back or shoulder every time pain results from the job being done.

I would reverse.

SHANAHAN, J., joins in this dissent.