JIMMY M. DAWES, APPELLANT AND CROSS-APPELLEE, V. WITTROCK SANDBLASTING & PAINTING, INC., AND CONTINENTAL WESTERN GROUP, DOING BUSINESS AS UNION INSURANCE COMPANY, ITS WORKERS' COMPENSATION INSURER, APPELLEES AND CROSS-APPELLANTS.

667 N.W.2d 167

Filed August 1, 2003.   No. S-02-889.

Jeffry D. Patterson, of Bartle & Geier Law Firm, for appellant.

Dallas D. Jones and Jenny L. Panko, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

The appellant, Jimmy M. Dawes, was awarded benefits by a single judge of the Nebraska Workers' Compensation Court, but that award failed to address some of the issues presented by Dawes' petition. A review panel of the compensation court affirmed some aspects of Dawes' award, but ordered that other issues be remanded to the single judge for further consideration. Dawes appeals from the order of the review panel. Dawes filed a petition to bypass review by the Nebraska Court of Appeals, which was supported by the other parties to the appeal. We granted the petition in order to address whether the single judge's award, because it did not expressly dispose of all the issues before the court, was a final, appealable order.

## BACKGROUND

### FACTS

The claimant, Dawes, injured his back in January 1996, while performing duties for his employer, Wittrock Sandblasting & Painting, Inc. (Wittrock). In August 1996, Dawes stopped work and sought medical attention for his injury. Dawes underwent surgery to correct a herniated lumbar disk at L4-5. Dawes returned to work in October 1996.

At the time of the 1996 injury, Dawes was covered by his wife's health insurance. The record contains two letters, dated September 20, 1996, to Dawes from Union Insurance (Union), Wittrock's workers' compensation insurance carrier. One letter, memorializing a telephone call, stated that Dawes' claim for workers' compensation benefits had been denied. The second letter, referencing the same telephone call as the first, stated that "in the spirit of compromise," Union would provide Dawes with lost-time benefits, as well as reimbursement for any out-of-pocket expenses.

The purpose of the first letter, according to Union's claims representative, was for Dawes to show the letter of "denial" to his wife's health insurance carrier, so that his medical expenses would be covered by his wife's insurance. In actuality, however, Union paid Dawes benefits for temporary total disability and temporary partial disability pursuant to the terms of the agreement

expressed in the second letter. The last such payment resulting from the 1996 injury was made on February 10, 1998.

Dawes sought medical care for back pain on a few occasions in early 1997 and had an isolated snow-shoveling incident in March 1998. Dawes also began to seek medical treatment for back pain in the summer of 1999. Dawes seriously injured his back in October 1999 and stopped work to seek medical treatment. Dawes underwent an anterior lumbar interbody fusion at L4-5 and L5-S1, performed by Dr. Tim Watt. In February 2000, Union refused Dawes' claim for workers' compensation coverage for the 1999 injury.

### SINGLE JUDGE'S FINDINGS

Dawes filed a petition in the Workers' Compensation Court in March 2000, and an operative amended petition in September. On December 4, 2001, the single judge of the compensation court entered an award providing workers' compensation benefits to Dawes for disability resulting from the 1999 injury. Specifically, the single judge determined that "the heavy labor that [Dawes] performed over the years with [Wittrock] resulted in a repetitive trauma injury to his low back and specifically a new injury on October 25, 1999."

The single judge determined that Dawes was entitled to temporary total disability benefits for the period between October 25, 1999, and June 20, 2000, and permanent partial disability benefits thereafter based on a 40-percent loss of earning capacity. The single judge based this determination on a letter dated June 20, 2000, releasing Dawes to return to work with a 15-pound lifting restriction. The letter was signed by Dr. Watt's nurse practitioner, "dictating for" Dr. Watt. The single judge also ordered payment of certain medical expenses incurred after the October 1999 injury. The single judge found that Dawes' health insurance carrier was entitled to reimbursement for any expenses it may have paid.

The single judge also determined that the 1996 injury was the result of a work-related accident. However, since the last payment made as a result of that accident occurred in February 1998, and Dawes' first petition was filed in March 2000, the single judge determined that any claim relating to the 1996 injury

was time barred by Neb. Rev. Stat. § 48-137 (Reissue 1998). The single judge therefore found it unnecessary to determine if the "compromise" between Dawes and Union was, in fact, payment of benefits within the meaning of § 48-137. The single judge eliminated all medical expenses incurred prior to the October 1999 injury. However, the single judge determined that since Dawes returned to work without restrictions in 1996, all of Dawes' disability following the 1999 injury was attributable to the 1999 injury.

## REVIEW PANEL ORDER

The review panel affirmed the single judge's finding that the 1999 injury was work related and that Dawes' temporary total disability began on October 25, 1999. However, the review panel ordered that the case be remanded for "further consideration" by the single judge of the date on which Dawes' period of temporary total disability ended. The review panel did not conclude, however, that the single judge was clearly wrong on the evidence or that the decision was contrary to law. Dawes had argued to the review panel that the June 20, 2000, letter was not prepared by Dr. Watt and that Dawes was unable to return to his prior employment within the restrictions imposed by the letter. The review panel directed the single judge to "consider" Dawes' argument on remand.

The review panel also remanded the case for reconsideration of Dawes' loss of earning capacity. The single judge had determined that the opinion of the court-appointed vocational rehabilitation counselor had not been rebutted by the expert tendered by the defense. The review panel stated that the single judge had erred by continuing to accord the court-appointed counselor's opinion the statutory rebuttable presumption of correctness after contrary evidence had been submitted, as such presumption " 'disappears' " on the introduction of contrary evidence.

The review panel also remanded the case for specific determinations on certain medical expenses to which the single judge's award did not speak. The review panel directed the single judge to consider, on remand, the amount of reimbursement to which Dawes' health insurance carrier might be entitled. The review panel also concluded, despite the lack of an express finding in

this regard by the single judge, that there was a reasonable controversy which precluded an award of waiting-time penalties and attorney fees.

## ASSIGNMENTS OF ERROR

Dawes assigns, restated, that the review panel erred in (1) finding no evidence that Dawes' condition was the result of an occupational disease, (2) concluding that Dawes' claim for benefits regarding his 1996 injury was barred by § 48-137, (3) remanding the issue of Dawes' loss of earning capacity to the single judge for reconsideration based on the conclusion that the rebuttable presumption of correctness "disappears" upon receipt of contrary evidence, (4) remanding the issue of Dawes' temporary total disability when the evidence shows that Dawes did not reach maximum medical improvement until August 2000, (5) failing to award reimbursement of all medical expenses for treatment of Dawes' back injury after the October 1999 accident when those expenses were uncontested, (6) directing the single judge to determine the subrogation interest of Dawes' health insurance carrier, (7) finding that there was a reasonable controversy, and (8) failing to award attorney fees on review when Wittrock did not obtain a reduction in the amount of the award.

On cross-appeal, Wittrock assigns, restated, that the review panel erred in (1) affirming the finding of the single judge that Dawes suffered a compensable accident in October 1999 and (2) remanding the issue of the period of temporary total disability to the single judge.

## STANDARD OF REVIEW

An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court did not support the order or award. *Misek v. CNG Financial*, 265 Neb. 837, 660 N.W.2d 495 (2003). In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court review panel, a higher appellate court reviews the findings of fact of the single

judge who conducted the original hearing; the findings of fact of the single judge will not be disturbed on appeal unless clearly wrong. *Schwan's Sales Enters. v. Hitz*, 263 Neb. 327, 640 N.W.2d 15 (2002). An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Larsen v. D B Feedyards*, 264 Neb. 483, 648 N.W.2d 306 (2002).

## ANALYSIS

### APPELLATE JURISDICTION—FINAL ORDER

■ Before reaching the legal issues presented for review, it is the duty of an appellate court to settle jurisdictional issues presented by a case. *Ryan v. Ryan*, 257 Neb. 682, 600 N.W.2d 739 (1999). This case presents a jurisdictional issue with respect to the finality of the award of the single judge, because certain matters, set forth above, were not expressly discussed in the award.

■ A party may appeal from a court's order only if the decision is a final, appealable order. *Sydow v. City of Grand Island*, 263 Neb. 389, 639 N.W.2d 913 (2002). Neb. Rev. Stat. § 48-179 (Cum. Supp. 2002) provides that "[e]ither party at interest who refuses to accept the final findings, order, award, or judgment of the Nebraska Workers' Compensation Court on the original hearing may, within fourteen days after the date thereof, file with the compensation court an application for review before the compensation court . . . ." Under § 48-179, the appeal from the single judge to the review panel must be taken from a final order. *Thompson v. Kiewit Constr. Co.*, 258 Neb. 323, 603 N.W.2d 368 (1999).

Both Dawes and Wittrock argue that this court should overrule the decision of the Court of Appeals in *Delgado v. IBP, inc.*, 11 Neb. App. 165, 645 N.W.2d 831 (2002). Dawes concedes that if *Delgado* is applied in the instant case, the order of the single judge is not a final, appealable order. In *Delgado* and a companion case, *Hamm v. Champion Manuf. Homes*, 11 Neb. App. 183, 645 N.W.2d 571 (2002), the Court of Appeals addressed the issue of final, appealable orders in workers' compensation cases and dismissed both appeals after raising the question of appellate jurisdiction sua sponte.

In *Hamm*, the single judge entered an award of temporary total disability and permanent partial disability benefits, but expressly reserved ruling on medical expenses and mileage due and owing, and set a hearing date to resolve the latter issues. The employer filed an application for review. The review panel affirmed in part and reversed in part, and remanded the case to the single judge to resolve the medical expenses and mileage. The employer appealed. The Court of Appeals, on its own motion, determined that the order of the single judge was not a final, appealable order because it did not resolve all the issues before it and, thus, that both the review panel and the Court of Appeals lacked jurisdiction over the case. *Id.* The Court of Appeals vacated the order of the review panel and remanded the cause with directions for the review panel to dismiss the application for review. *Id.*

In *Delgado, supra*, released on the same date, the single judge awarded permanent partial disability and temporary partial disability benefits and medical expenses, but made no findings or order concerning other issues presented by the claimant's petition, including vocational rehabilitation, penalties, interest, or attorney fees. Unlike *Hamm*, in *Delgado*, the single judge did not expressly reserve ruling on the issues; rather, the single judge's order simply failed to discuss them. The employee applied for review of the award, but the review panel decided that the single judge's failure to address the remaining issues was not error because the absence of a specific finding indicated that the single judge found a lack of merit to the employee's claims. The review panel decided, however, that the single judge had failed to provide a reasoned decision about the employee's loss of earning capacity, and remanded the case to the single judge for a decision on that issue.

The employee appealed, and the Court of Appeals rejected the review panel's conclusion that the single judge made an implied ruling denying interest, penalties, and attorney fees by not discussing or ruling upon such matters. *Id.* The Court of Appeals stated that it was "impossible . . . to know whether the trial judge actually intended an implied denial or whether he simply forgot to rule upon those issues." *Id.* at 168, 645 N.W.2d at 834. The Court of Appeals concluded that the order of the single judge was

nonfinal, vacated the order of the review panel, and remanded the cause with directions to dismiss the application for review.

■ Generally, when multiple issues are presented to a trial court for simultaneous disposition in the same proceeding and the court decides some of the issues, while reserving some issue or issues for later determination, the court's determination of less than all the issues is an interlocutory order and is not a final order for the purpose of an appeal. *Huffman v. Huffman*, 236 Neb. 101, 459 N.W.2d 215 (1990). This principle underlies the Court of Appeals' decision in *Hamm v. Champion Manuf. Homes*, 11 Neb. App. 183, 645 N.W.2d 571 (2002), in which issues were expressly reserved by the single judge for later determination. The instant case is distinguishable, however, as the issues not discussed in the award were not expressly reserved for later determination. It is apparent, from an examination of the award and the procedural posture of the case, that the award was meant to be a final determination of the rights and liabilities of the parties.

We recently addressed a similar situation in *Olson v. Palagi, ante* p. 377, 665 N.W.2d 582 (2003). In *Olson*, the respondent to a petition to modify a child support obligation asked, in her answer to the petition, to be awarded attorney fees and costs. The district court's order disposing of the petition, however, did not speak to attorney fees and costs. After the judgment was entered, the respondent filed an application for attorney fees and costs. The petitioner then appealed the merits of the order, and the respondent did not cross-appeal. After the appeal was disposed of, the district court held a hearing and awarded the respondent attorney fees and costs. See *id.*

■ On appeal from the order of attorney fees and costs, we determined that the district court did not have jurisdiction to award attorney fees and costs. *Id.* We noted that attorney fees, where recoverable, are generally treated as an element of court costs. *Id.*, citing *Salkin v. Jacobsen*, 263 Neb. 521, 641 N.W.2d 356 (2002). We stated that an award of costs in a judgment is considered part of the judgment and that a party seeking a statutorily authorized attorney fee, for services rendered in a trial court, must make a request for such fees prior to a judgment in the cause, so the award of attorney fees, if appropriate, may be made a part of the judgment or final order. *Id.*

Applying those principles, we concluded that the order of the district court disposing of the petition to modify was a final, appealable order. *Id.* The silence of the judgment on the issue of attorney fees "must be construed as a denial of [the respondent's] request [for attorney fees] under these circumstances." *Id.* at 380, 665 N.W.2d at 585. Because the respondent failed to appeal from the district court's implicit denial of attorney fees, the respondent later had no recourse for the recovery of such fees. See *id.*

The same principles guide our resolution of the situation presented in the instant case. The single judge's order was clearly intended to serve as a final adjudication of the rights and liabilities of the parties. No issues were reserved for further determination. As a practical matter, the substantial effect of the judgment was to dispose of the entire case, end the litigation, and leave nothing for the court to do. See *Alaskans for a Common Language v. Kritz*, 3 P.3d 906 (Alaska 2000). See, e.g., *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191 (Tex. 2001); *UAP-Columbus JV 326132 v. Nesbitt*, 234 Cal. App. 3d 1028, 285 Cal. Rptr. 856 (1991), citing *Lyon v. Goss*, 19 Cal. 2d 659, 123 P.2d 11 (1942). The silence of the single judge's order on the requests for relief not spoken to, including medical expenses and waiting-time penalties, must be construed as a denial of those requests under the circumstances.

As a practical matter, the single judge affected a final adjudication by failing to award certain aspects of the relief requested by Dawes. Had the single judge expressly reserved ruling on those matters, the award would not have been final. See *Hamm v. Champion Manuf. Homes*, 11 Neb. App. 183, 645 N.W.2d 571 (2002). However, Dawes asked for benefits, and the single judge, by awarding some of those benefits and failing to reserve any issues for later determination, effectively denied Dawes' remaining claims, and the resulting award was final and appealable. To the extent that *Delgado v. IBP, inc.*, 11 Neb. App. 165, 645 N.W.2d 831 (2002), and *Martinez v. Greater Omaha Packing*, 12 Neb. App. 10, 664 N.W.2d 486 (2003), would indicate otherwise, they are hereby disapproved.

We note, however, that while the single judge's omissions are not fatal to the finality of this award, they may nonetheless

constitute error requiring reversal or remand of the cause. Workers' Comp. Ct. R. of Proc. 11 (2000) provides:

> All parties are entitled to reasoned decisions which contain findings of fact and conclusions of law based upon the whole record which clearly and concisely state and explain the rationale for the decision so that all interested parties can determine why and how a particular result was reached. The judge shall specify the evidence upon which the judge relies. The decision shall provide the basis for a meaningful appellate review.

In *Owen v. American Hydraulics*, 254 Neb. 685, 578 N.W.2d 57 (1998), this court determined that certain statements in the order of the single judge were contradictory on the question of the employer's liability. Citing rule 11, we determined that "[n]either party should prevail on the basis of an ambiguity." *Owen*, 254 Neb. at 695, 578 N.W.2d at 64. Finding that the failure of the single judge to clearly determine the issue precluded meaningful appellate review, we remanded the cause to the single judge with directions to enter an order complying with the requirements of rule 11. *Owen, supra.* See, also, *Torres v. Aulick Leasing*, 258 Neb. 859, 606 N.W.2d 98 (2000); *Hale v. Standard Meat Co.*, 251 Neb. 37, 554 N.W.2d 424 (1996).

The situation is somewhat analogous to those faced by the appellate courts of this state when district courts, in determining child support, have failed to supplement their orders with the completed forms required by the Nebraska Child Support Guidelines. See, e.g., *Brooks v. Brooks*, 261 Neb. 289, 622 N.W.2d 670 (2001). In such instances, while the lower court's failure to include necessary findings is not a jurisdictional defect, it may nonetheless be error requiring a remand for a proper calculation of support. See *id.*

### ANALYSIS OF REPETITIVE TRAUMA INJURIES

Both Dawes and Wittrock urge this court to overrule precedent and hold that repetitive trauma injuries are not "accidents," but "occupational diseases." We have held that while such cases have some characteristics of both accidental injury and occupational disease, the compensability of a condition resulting from the cumulative effects of work-related trauma is

to be tested under the statutory definition of accident. See, e.g., *Vonderschmidt v. Sur-Gro,* 262 Neb. 551, 635 N.W.2d 405 (2001); *Fay v. Dowding, Dowding,* 261 Neb. 216, 623 N.W.2d 287 (2001); *Owen v. American Hydraulics,* 258 Neb. 881, 606 N.W.2d 470 (2000); *Jordan v. Morrill County,* 258 Neb. 380, 603 N.W.2d 411 (1999); *Frank v. A & L Insulation,* 256 Neb. 898, 594 N.W.2d 586 (1999); *Schlup v. Auburn Needleworks,* 239 Neb. 854, 479 N.W.2d 440 (1992); *Vencil v. Valmont Indus.,* 239 Neb. 31, 473 N.W.2d 409 (1991), *disapproved, Jordan, supra*; *Maxson v. Michael Todd & Co.,* 238 Neb. 209, 469 N.W.2d 542 (1991), *disapproved, Jordan, supra*; *Crosby v. American Stores,* 207 Neb. 251, 298 N.W.2d 157 (1980). See, also, *Morris v. Nebraska Health Systems, ante* p. 285, 664 N.W.2d 436 (2003) (distinguishing between repetitive trauma cases and occupational disease cases).

The parties ask that this authority be overruled, albeit with substantially different motives. Dawes seeks to connect his 1996 injury to his 1999 injury as part of one "occupational disease," so that both the 1996 injury and 1999 injury are compensable. In an occupational disease context, the date of injury, for purposes of § 48-137, is that date upon which the accumulated effects of the disease manifest themselves to the point the injured worker is no longer able to render further service. See *Morris, supra.* Wittrock, on the other hand, argues that repetitive trauma should be treated as an occupational disease and that Dawes did not prove an occupational disease; thus, Dawes is entitled to no compensation for either injury.

We decline the parties' invitation to overrule our precedent. As previously noted, it has been the law for many years that repetitive trauma injuries are tested under the definition of accident, as opposed to occupational disease. We reaffirmed this rule, very recently, in *Morris, supra.* Furthermore, four justices of this court invited the Legislature to consider this issue over a decade ago. See *Vencil, supra* (Caporale, J., concurring, joined by Boslaugh, White, and Fahrnbruch, JJ.). When judicial interpretation of a statute has not evoked a legislative amendment, it is presumed that the Legislature has acquiesced in the court's interpretation. *Sheldon-Zimbelman v. Bryan Memorial Hosp.,* 258 Neb. 568, 604 N.W.2d 396 (2000). The Legislature has not

only acquiesced in our interpretation of Neb. Rev. Stat. § 48-151 (Supp. 1999) regarding repetitive trauma injuries, but has declined the express invitation of a majority of this court to consider and amend our interpretation.

■ The doctrine of stare decisis is grounded on public policy and, as such, is entitled to great weight and must be adhered to unless the reasons therefor have ceased to exist, are clearly erroneous, or are manifestly wrong and mischievous or unless more harm than good will result from doing so. *State v. Reeves*, 258 Neb. 511, 604 N.W.2d 151 (2000). The parties in this case have provided no reason compelling enough to justify departure from our prior cases. Therefore, Dawes' first assignment of error is without merit.

STATUTE OF LIMITATIONS FOR 1996 INJURY

Dawes assigns that the single judge erred in determining that Dawes' claim for medical benefits relating to the 1996 injury was time barred by § 48-137. Dawes' first argument is that the 1996 injury should be treated, not as an accident, but as part of the course of an occupational disease. We have already determined that this argument is without merit.

Dawes then argues that, even analyzing the 1996 injury as an accident, his claim is not time barred. Section 48-137 provides, in relevant part:

> In case of personal injury, all claims for compensation shall be forever barred unless, within two years after the accident, the parties shall have agreed upon the compensation payable under the Nebraska Workers' Compensation Act, or unless, within two years after the accident, one of the parties shall have filed a petition as provided in section 48-173. . . . When payments of compensation have been made in any case, such limitation shall not take effect until the expiration of two years from the time of the making of the last payment.

We assume without deciding, for purposes of this opinion, that the payments made by Union pursuant to the "compromise agreement" constitute payment of compensation within the meaning of the Nebraska Workers' Compensation Act. In making that assumption, we do not address whether the "compromise agreement" was itself appropriate, ethical, or legal.

The last payment made by Union for benefits resulting from the 1996 injury was made on February 10, 1998. Dawes' petition was not filed until September 22, 2000. When payments of compensation have been made pursuant to an agreement between the parties, as in the instant case, the statute of limitations set forth in § 48-137 will not take effect until the expiration of 2 years from the time of the making of the last payment. See *Snipes v. Sperry Vickers*, 251 Neb. 415, 557 N.W.2d 662 (1997). There has been no allegation that this case presents any exception to the statute of limitations, such as a latent and progressive injury, or a material increase in the claimant's disability. See, *id.*; *Binkerd v. Central Transportation Co.*, 236 Neb. 350, 461 N.W.2d 87 (1990). Consequently, Dawes' claims relating to the 1996 injury are time barred.

Dawes argues, however, that his medical insurance carrier made payments, in 1998 and 1999, for treatment of recurrent back pain caused by the 1996 injury and that these payments were made less than 2 years prior to the filing of his petition. Dawes relies on *Maxey v. Fremont Department of Utilities*, 220 Neb. 627, 636-37, 371 N.W.2d 294, 301 (1985), in which we held that

> payment of wages or reimbursement of medical expense by an employer under an employee benefit plan or group health insurance agreement does not constitute remuneration in lieu of workmen's compensation benefits so as to toll the statute of limitations, unless, by the conduct of the employer, it may reasonably be inferred that such payments were made with an intent that payment constitute[s] compensation and a conscious recognition of liability for compensation benefits on the part of the employer.

The facts of this case do not fall within the exception we recognized in *Maxey*. In *Maxey*, the claimant's medical expenses were paid, not by his employer's workers' compensation insurance carrier, but by the employer's health insurance carrier. We rejected the claimant's argument that those insurance payments were "payments of compensation" within the meaning of § 48-137. But we left open the possibility that an employer might be estopped from asserting the statute of limitations where the employer had recognized its liability for workers' compensation

benefits, and directed payments to be made by a health insurance carrier to satisfy that obligation. See *Maxey, supra.* The concern was that a claimant might misunderstand the character of payments received. See *id.* However, "voluntary payment of wages or medical benefits does not toll the statute of limitations unless the employer is aware or should be aware that it constitutes payment of compensation for the injury." *Id.* at 637, 371 N.W.2d at 301.

In this case, the health insurance carrier was not associated with the employer. Rather, Dawes was covered by his wife's health insurance plan, and there was no possibility of confusion regarding the source or character of the medical coverage. The concern expressed in *Maxey* about possible confusion regarding the nature of the benefits received is simply not present in this case. Instead, in *Maxey*, we specifically rejected the argument that benefits paid by collateral sources were "compensation" sufficient to toll § 48-137. That principle applies here. The last "payment of compensation" made in this case for the 1996 injury was made by Union more than 2 years prior to the filing of Dawes' petition.

Finally, Dawes argues that § 48-137 was tolled in this case by Neb. Rev. Stat. § 48-144.04 (Reissue 1998), which provides in relevant part:

> Any employer, risk management pool, or insurance carrier who fails, neglects, or refuses to file any report required of him or her by the Nebraska Workers' Compensation Court shall be guilty of a Class II misdemeanor for each such failure, neglect, or refusal. . . . In addition to the penalty, where an employer, risk management pool, or insurance carrier has been given notice, or the employer, risk management pool, or the insurance carrier has knowledge, of any injury or death of an employee and fails, neglects, or refuses to file a report thereof, the limitations in section 48-137 . . . shall not begin to run against the claim of the injured employee or his or her dependents entitled to compensation . . . or in favor of either the employer, risk management pool, or the insurance carrier until such report shall have been furnished as required by the compensation court.

Dawes argues that pursuant to § 48-144.04, the statute of limitations was tolled when neither Wittrock nor Union filed one of

the "Subsequent Report[s]" of payment required by Workers' Comp. Ct. R. of Proc. 30 (2000).

The plain language of § 48-144.04, however, does not support Dawes' argument. Neb. Rev. Stat. § 48-144.01 (Reissue 1998) requires an employer or insurance carrier to file an initial report of a death or injury. Section 48-144.04 then provides that the statute of limitations in § 48-137 does not "begin to run" until the employer or insurance carrier is aware of the death or injury of an employee, and does not file a report of that death or injury. When read in pari materia, see *Foote v. O'Neill Packing*, 262 Neb. 467, 632 N.W.2d 313 (2001), the "report" of "injury or death" in § 48-144.04 is a clear reference to the initial report required by § 48-144.01. Section 48-144.04 establishes when the statute of limitations "begins to run" if an *initial* report is not filed, but plainly does not provide for tolling of an already-running statute of limitations if subsequent reports are not filed. The initial report of the 1996 injury, required by § 48-144.01, was timely filed.

The facts of this case do not present any exception to § 48-137 under which Dawes' petition was timely filed. The single judge and review panel correctly concluded that any claims for benefits resulting from the 1996 injury are time barred by § 48-137. Dawes' second assignment of error is without merit.

## LOSS OF EARNING CAPACITY—OPINION OF VOCATIONAL REHABILITATION COUNSELOR

Dawes next assigns that the review panel erred in remanding the issue of loss of earning capacity to the single judge. The single judge's order in this case discussed the opinion of a court-appointed vocational rehabilitation counselor, who concluded that Dawes suffered a 40-percent loss of earning capacity. The single judge, citing *Variano v. Dial Corp.*, 256 Neb. 318, 589 N.W.2d 845 (1999), stated that the opinion of the court-appointed counselor was entitled to a presumption of correctness. See Neb. Rev. Stat. § 48-162.01(3) (Supp. 1999). The single judge noted rebuttal evidence offered by Wittrock, but found that it did not rebut the presumption of correctness to which the opinion of the court-appointed counselor was entitled.

The review panel concluded that the single judge erred. The review panel stated that "a rebuttable presumption 'disappears'

upon the receipt of contrary evidence" and that "[a]fter the receipt of contrary evidence in the present case, the trial court continued to accord the opinion of the court-appointed counselor the statutory presumption of correctness, which was error as a matter of law." Consequently, the review panel remanded the issue of loss of earning capacity to the single judge for reconsideration.

The review panel's analysis, however, is contrary to our opinion in *Variano*, 256 Neb. at 326, 589 N.W.2d at 851, in which we stated:

A "rebuttable presumption" is generally defined as "[a] presumption that can be overturned upon the showing of sufficient proof." Black's Law Dictionary 1186 (6th ed. 1990). "In all cases not otherwise provided for by statute or by these rules a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence." Neb. Evid. R. 301, Neb. Rev. Stat. § 27-301 (Reissue 1995). We hold that this rule applies to the rebuttable presumption that an opinion regarding loss of earning capacity expressed by a vocational rehabilitation counselor appointed or selected pursuant to § 48-162.01(3) is correct.

Accord, *Frauendorfer v. Lindsay Mfg. Co.*, 263 Neb. 237, 639 N.W.2d 125 (2002); *Rodriguez v. Monfort, Inc.*, 262 Neb. 800, 635 N.W.2d 439 (2001); *Noordam v. Vickers, Inc.*, 11 Neb. App. 739, 659 N.W.2d 856 (2003); *Romero v. IBP, inc.*, 9 Neb. App. 927, 623 N.W.2d 332 (2001).

By holding that the rebuttable presumption of correctness established by § 48-162.01(3) was governed by Neb. Evid. R. 301, Neb. Rev. Stat. § 27-301 (Reissue 1995), we rejected the "bursting bubble" theory upon which the review panel's analysis was based. See, *McGowan v. McGowan*, 197 Neb. 596, 250 N.W.2d 234 (1977) (explaining effect of Neb. Evid. R. 301); Fed. R. Evid. 301 advisory committee note (explaining that proposed Fed. R. Evid. 301, upon which Neb. Evid. R. 301 is based, rejected "bursting bubble" theory under which presumption vanishes upon introduction of contrary evidence); G. Michael Fenner, *Presumptions: 350 Years of Confusion and It Has Come to This*, 25 Creighton L. Rev. 383 (1992).

Thus, pursuant to § 48-162.02(3) and § 27-301, the burden was placed on Wittrock to prove the incorrectness of the court-appointed counselor's opinion. See *Spaghetti Ltd. Partnership v. Wolfe*, 264 Neb. 365, 647 N.W.2d 615 (2002) (applying Neb. Evid. R. 301). The single judge's opinion correctly applies the law as explained by our decision in *Variano v. Dial Corp.*, 256 Neb. 318, 589 N.W.2d 845 (1999). Dawes is correct in arguing that the review panel erred in concluding otherwise. This purported legal error was the sole basis for the review panel's conclusion that the issue of loss of earning capacity should be remanded. Therefore, the decision of the review panel is reversed to the extent that it requires the single judge to reconsider Dawes' loss of earning capacity. Instead, the decision of the single judge on that issue should be affirmed.

END DATE OF TEMPORARY TOTAL DISABILITY

Dawes' fourth assignment of error, and Wittrock's second assignment of error on cross-appeal, are that the review panel erred in remanding the issue of Dawes' temporary total disability to the single judge. Dawes argues that the single judge erred in finding that Dawes' period of temporary total disability ended on June 20, 2000, but that the review panel should have determined, as a matter of law, that Dawes' temporary total disability lasted until the date of his maximum medical improvement on August 8, 2000. Wittrock, on the other hand, argues that the single judge was correct and that the review panel should have affirmed the single judge's finding. Because the parties' separate assignments of error are directed at the same issue, we consider them together.

The single judge determined that Dawes' period of temporary total disability ended on June 20, 2000, based upon a letter from Dr. Watt's nurse practitioner, "dictating for" Dr. Watt. The letter cleared Dawes to return to work subject to certain restrictions on his lifting and movement. The review panel, however, determined that "this matter should be remanded to [the single judge] for further consideration." The review panel did not conclude that the single judge's finding was incorrect. Rather, the review panel simply requested that the single judge "consider" that the letter on which the single judge relied was prepared by Dr. Watt's nurse

practitioner instead of Dr. Watt and whether Dawes was employable within the restrictions imposed by the letter. The review panel also pointed the parties to other evidence that the single judge could consider on remand.

Temporary disability is the period during which the employee is submitting to treatment, is convalescing, is suffering from the injury, and is unable to work because of the accident. *Frauendorfer v. Lindsay Mfg. Co.*, 263 Neb. 237, 639 N.W.2d 125 (2002). Total disability exists when an injured employee is unable to earn wages in either the same or a similar kind of work he or she was trained or accustomed to perform or in any other kind of work which a person of the employee's mentality and attainments could perform. *Id.*

Dawes argues that he was unable to work within the restrictions imposed by the June 20, 2000, letter. However, the record contains competent evidence to support the finding of the single judge. The report of the court-ordered vocational rehabilitation counselor set forth the occupations for which, in the opinion of the counselor, Dawes was qualified. Several of those occupations, according to the report, would impose only light or sedentary physical demands—within the physical restrictions imposed in the June 20 letter. The determination as to the length of temporary total disability is one of fact. *Yager v. Bellco Midwest*, 236 Neb. 888, 464 N.W.2d 335 (1991). The record contains competent evidence supporting the single judge's finding that June 20 was the end date of Dawes' temporary total disability, and if the record contains evidence to substantiate the factual conclusions reached by the single judge in workers' compensation cases, an appellate court is precluded from substituting its view of the facts for that of the compensation court. See *Frauendorfer, supra*. Dawes' assignment of error is without merit.

For many of the same reasons, however, Wittrock's assignment of error on cross-appeal does have merit. The findings of fact made by a single judge of the Workers' Compensation Court are not to be disturbed upon appeal to a Workers' Compensation Court review panel unless they are clearly wrong on the evidence or the decision was contrary to law. See, § 48-179; *Wilson v. Larkins & Sons*, 249 Neb. 396, 543 N.W.2d 735 (1996). While "remanding" a case and directing the single judge to

"reconsider" a finding of fact is not, taken literally, a reversal of the single judge's order, under the circumstances presented here, it has the same effect. While a review panel has the statutory authority to remand a case, see *U S West Communications v. Taborski*, 253 Neb. 770, 572 N.W.2d 81 (1998), we are of the view that a review panel exceeds that authority when it remands a case with directions to "reconsider" a decision without first concluding that the single judge made an error of fact or law.

■ As previously stated, the findings of the single judge regarding temporary total disability were not clearly wrong. Furthermore, no error of law underlying the single judge's finding has been identified. While a single judge's order may be "contrary to law" within the meaning of § 48-179 if it fails to satisfy the requirements of rule 11, see *Owen v. American Hydraulics*, 254 Neb. 685, 578 N.W.2d 57 (1998), the single judge's finding on this issue was consistent with rule 11. The single judge made a clear finding of fact and identified the evidence in the record on which that finding was based, literally complying with the requirement that the decision "clearly and concisely state and explain the rationale for the decision" and "specify the evidence upon which the judge relies." See rule 11.

In the absence of an error of fact or law, the review panel erred in directing the single judge, on remand, to reconsider the ending date of Dawes' temporary total disability. The single judge's finding was clearly stated and supported by the record. The order of the review panel is reversed to the extent that it directs the single judge to reconsider that finding.

UNCOMPENSATED MEDICAL EXPENSES

■ As previously noted, the review panel directed the single judge, on remand, to dispose of two medical bills to which the single judge's award did not speak. Dawes argues that the review panel should have found as a matter of law that he should be compensated for those expenses. When an employee in a workers' compensation case presents evidence of medical expenses resulting from injury, he or she has made out a prima facie case of fairness and reasonableness, causing the burden to shift to the employer to adduce evidence that the expenses are not fair and reasonable. *Bituminous Casualty Corp. v. Deyle*, 234 Neb. 537,

451 N.W.2d 910 (1990). Dawes argues that he made a prima facie case with respect to the unawarded expenses that was not rebutted, thus entitling him to compensation for those expenses.

Dawes argues that the record does not contain any evidence rebutting the fairness or reasonableness of the expenses, or the causal relationship between the expenses and his 1999 injury. Our review of the record supports this argument. The record contains the two medical bills omitted in the single judge's award: $440 for magnetic imaging performed by the Lincoln Radiology Group on November 19, 1999, and $3,024 from the Lincoln Surgical Group for Dawes' lumbar fusion. The record also contains the medical reports associated with these bills, establishing their relationship to Dawes' injury. Wittrock does not argue that the expenses were not fair and reasonable, nor does our review of the record provide any basis for such an argument.

Nonetheless, we do not conclude that the review panel erred in remanding this issue to the single judge. The single judge listed all of the medical expenses she found to be compensable, but expressly denied compensation for other medical expenses, one of which lacked a supporting medical record, and the remainder of which were incurred prior to the 1999 injury. The single judge's award simply does not mention the expenses noted above. We agree with the review panel that it cannot be discerned, from the single judge's award, why those expenses were omitted. In that respect, the single judge's award does not meet the requirements of rule 11, because we are unable to conduct a "meaningful appellate review."

We note that this case must be remanded to the single judge in any event, because the parties agree, as did the review panel, that the single judge erred in her calculations of Dawes' average weekly wage. The review panel ordered that the case be remanded for a recalculation in that regard, and none of the parties to this appeal challenge that aspect of the review panel's order. Nor does either party dispute the review panel's calculation that based on the dates found by the single judge, Dawes is entitled to $34\frac{2}{7}$ weeks of temporary total disability, rather than the $33\frac{4}{7}$ weeks ordered by the single judge. Since the case must be remanded to the single judge in any event, we agree with the review panel that the single judge should be required, in the first instance, to

explain and resolve her incomplete discussion of Dawes' claimed medical expenses. The single judge should either explain why the expenses were denied, or award the expenses if she finds that to be appropriate. Therefore, Dawes' fifth assignment of error shall be resolved in that manner.

### SUBROGATION INTEREST OF HEALTH INSURANCE CARRIER

The single judge's order set forth the medical expenses she found to be compensable and stated that Principal Health Insurance Company (Principal), Dawes' health insurance carrier, "should be reimbursed as its interest may appear for payments made on behalf of the plaintiff." The single judge did not specify how this reimbursement was to be made, ordering only that Wittrock "pay for and on behalf of [Dawes] the medical and hospital expenses incurred by [Dawes] as a result of said accident and injury."

Dawes argued to the review panel that the single judge had erred by failing to order that Dawes be reimbursed for expenses that had been paid either by him or by Principal. The review panel rejected this argument, stating that Dawes "is not entitled to reimbursement for payments made by a health insurer." The review panel ordered that Principal be reimbursed. The review panel, relying upon *Kidd v. Winchell's Donut House*, 237 Neb. 176, 465 N.W.2d 442 (1991), ordered that on remand, the single judge should specify the amount of reimbursement. Dawes now assigns that the review panel erred in directing the single judge to determine the extent of Principal's subrogation interest in Dawes' workers' compensation award.

Dawes' assignment of error has merit. The Workers' Compensation Court does not have jurisdiction to determine Principal's subrogation interest, if any, in Dawes' workers' compensation award. In *Miller v. M.F.S. York/Stormor*, 257 Neb. 100, 595 N.W.2d 878 (1999), an injured employee filed a petition in the Workers' Compensation Court, requesting compensation and seeking a determination as to the amount of credit to which the employer was entitled as a result of the employee's settlement of a third-party tort action filed in federal court. We concluded, however, that the Workers' Compensation Court did not have jurisdiction to make such a determination. *Id.*

As a statutorily created court, the Workers' Compensation Court is a tribunal of limited and special jurisdiction and has only such authority as has been conferred upon it by statute. *Id.* The Workers' Compensation Court can only resolve disputes that arise from the provisions of the Nebraska Workers' Compensation Act. *Miller, supra.* In *Miller,* we held that the Nebraska Workers' Compensation Act did not confer jurisdiction on the Workers' Compensation Court to hear personal injury suits against nonemployers. The employee's suit against the tort-feasor at issue in that case did not arise under the provisions of the Nebraska Workers' Compensation Act, and the Workers' Compensation Court did not have jurisdiction to determine the amount of credit to which the employer may have been entitled. *Miller, supra.*

The same principles of law apply here. A dispute between Dawes and Principal regarding Principal's subrogation interest, if any, does not arise under the provisions of the Nebraska Workers' Compensation Act. Subrogation is the substitution of one person who is not a volunteer, the subrogee (in this case, Principal), for another, the subrogor (Dawes), as the result of the subrogee's payment of a debt owed to the subrogor so that the subrogee succeeds to the subrogor's right to recover the amount paid by the subrogee. See *Combined Insurance v. Shurter,* 258 Neb. 958, 607 N.W.2d 492 (2000). A party's right to subrogate may arise under principles of equity, may be contractual, or may be set out in statute. *Id.* In this case, any subrogation interest of Principal must arise in equity or pursuant to Principal's health insurance contract.

However, the Workers' Compensation Court does not have general equitable jurisdiction. See *Anthony v. Pre-Fab Transit Co.,* 239 Neb. 404, 476 N.W.2d 559 (1991). Nor does any provision of the Nebraska Workers' Compensation Act afford the Workers' Compensation Court jurisdiction to resolve contractual disputes between employees and third-party insurers. Cf. *Miller, supra.* We conclude, therefore, that the Workers' Compensation Court does not have jurisdiction to determine whether, or to what extent, Principal may have a subrogation interest in the proceeds of Dawes' workers' compensation award.

Dawes also correctly contends that any benefits to which he is entitled should be paid to him. Neb. Rev. Stat. § 48-130 (Reissue 1998) provides:

> No savings or insurance of the injured employee or any contribution made by him or her to any benefit fund or protective association independent of the Nebraska Workers' Compensation Act shall be taken into consideration in determining the compensation to be paid thereunder; nor shall benefits derived from any other source than those paid or caused to be paid by the employer as herein provided be considered in fixing compensation under such act.

Pursuant to § 48-130, the payment of private insurance benefits does not entitle an employer to reduce an employee's benefits due under the Nebraska Workers' Compensation Act. *Nunn v. Texaco Trading & Transp.*, 3 Neb. App. 101, 523 N.W.2d 705 (1994). While a private insurance policy may provide that benefits payable under the private insurance policy can be offset by workers' compensation benefits paid, that is a contract issue, and not a matter for the Workers' Compensation Court to resolve. See, *Miller v. M.F.S. York/Stormor*, 257 Neb. 100, 595 N.W.2d 878 (1999); *Nunn, supra.*

Furthermore, Neb. Rev. Stat. § 48-147 (Cum. Supp. 2002) provides that

> liability for compensation under [the Nebraska Workers' Compensation Act] shall not be reduced or affected by any insurance of the injured employee, or any contribution or other benefit whatsoever, due to or received by the person entitled to such compensation, and the person so entitled shall, irrespective of any insurance or other contract, have the right to recover the same directly from the employer.

While both §§ 48-130 and 48-147 preclude an employer from reducing an employee's workers' compensation benefits due to the employee's private insurance, § 48-147 specifically provides that the employee has the right to recover the workers' compensation benefits directly from the employer.

*Kidd v. Winchell's Donut House*, 237 Neb. 176, 465 N.W.2d 442 (1991), relied upon by the review panel, is not to the contrary. In *Kidd*, this court directed the Workers' Compensation

Court to determine the subrogation rights of the then Nebraska Department of Social Services (DSS) in workers' compensation benefits awarded to a recipient of DSS medical assistance benefits. However, we did so based on Neb. Rev. Stat. § 68-716 (Cum. Supp. 1988), which then provided:

> An application for medical assistance benefits shall give a right of subrogation to the Department of Social Services. Subject to sections 68-1038 to 68-1046, subrogation shall include every claim or right which the applicant may have against a third party when such right or claim involves money for medical care. The third party shall be liable to make payments directly to the Department of Social Services as soon as he or she is notified in writing of the valid claim for subrogation under this section.

We held that pursuant to § 68-716, in a workers' compensation case, DSS and any third party liable to DSS were entitled to a determination of the subrogation interest.

In *Kidd, supra,* the Workers' Compensation Court was required to determine the subrogation interest of DSS because the broad language of § 68-716 gave DSS a subrogation interest in "*every* right or claim" the applicant had against a third party, and required the third party (in that case, the employer) to make payments directly to DSS. Jurisdiction to decide the matter was conferred on the Workers' Compensation Court by statute. See *Zavala v. ConAgra Beef Co.,* 265 Neb. 188, 655 N.W.2d 692 (2003) (Workers' Compensation Court possesses only such authority as is delineated by statute). In this case, however, there is no applicable analog to § 68-716.

We conclude that the Workers' Compensation Court lacks jurisdiction to determine Principal's subrogation interest, if any, in Dawes' workers' compensation award. Dawes is entitled to the full measure of his compensation benefits, and any interest of Principal must be determined in another proceeding brought in a court of competent jurisdiction. See *Miller v. M.F.S. York/Stormor,* 257 Neb. 100, 595 N.W.2d 878 (1999). The order of the review panel is reversed to the extent that it directs the single judge to determine how Principal should be reimbursed, and the order of the single judge should be reversed to the extent that it states Principal should be reimbursed.

## REASONABLE CONTROVERSY AND ATTORNEY FEES

Dawes' seventh assignment of error states that the review panel erred in determining that there was a reasonable controversy, such that Dawes was not entitled to waiting time penalties. Neb. Rev. Stat. § 48-125 (Cum. Supp. 2002) authorizes a penalty of 50 percent of compensation payable where there is no reasonable controversy regarding an employee's claim for workers' compensation and payment is delinquent for 30 days. *Hobza v. Seedorff Masonry, Inc.*, 259 Neb. 671, 611 N.W.2d 828 (2000). The penalty statute is to encourage prompt payment of benefits. *Hollandsworth v. Nebraska Partners*, 260 Neb. 756, 619 N.W.2d 579 (2000). In summary, the mandate for prompt payment of benefits requires that employees and insurers promptly handle and decide claims. If they do not, and there is no reasonable controversy about compensability, then penalties will be assessed. *Hale v. Vickers, Inc.*, 10 Neb. App. 627, 635 N.W.2d 458 (2001).

A reasonable controversy under § 48-125 may exist (1) if there is a question of law previously unanswered by the appellate courts, which question must be answered to determine a right or liability for disposition of a claim under the Nebraska Workers' Compensation Act, or (2) if the properly adduced evidence would support reasonable but opposite conclusions by the Nebraska Workers' Compensation Court concerning an aspect of an employee's claim for workers' compensation, which conclusions affect allowance or rejection of an employee's claim, in whole or in part. *Guico v. Excel Corp.*, 260 Neb. 712, 619 N.W.2d 470 (2000). To avoid the penalty provided for in § 48-125, an employer need not prevail in the employee's claim, but must have an actual basis in law or fact for disputing the claim and refusing compensation. *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 408 N.W.2d 280 (1987); *Hale, supra.*

As previously noted, the single judge made no finding regarding the existence of a reasonable controversy. The review panel resolved the issue as a matter of law by concluding that a reasonable controversy existed. We agree with this determination. As noted by the review panel, Wittrock presented the expert medical opinion of an orthopedic surgeon, who opined that Dawes' condition "occurred as a result of a life-long wear and

tear arthritic disease process . . . and is not the result of any specific event, at work or elsewhere." The expert rejected the idea that repetitive labor was a cause of lumbar disk disease and concluded, to a reasonable degree of medical certainty, that Dawes suffered from a severe degenerative disk disease which was "not due to any specific injury."

When there is conflict in the medical testimony adduced at trial, reasonable but opposite conclusions can be reached by the compensation court. *McBee v. Goodyear Tire & Rubber Co.*, 255 Neb. 903, 587 N.W.2d 687 (1999). Here, Wittrock presented expert medical testimony that would have supported a finding that Dawes' condition was not the result of an accident arising out of and in the course of employment. See Neb. Rev. Stat. § 48-101 (Reissue 1998). While this opinion was not adduced until after the denial of benefits, it is evidence that Wittrock had an actual basis in law or fact for denying Dawes' claim. See *Mendoza, supra.* Consequently, the review panel did not err in determining that a reasonable controversy was presented.

Dawes' final argument is that the review panel should have awarded attorney fees because Wittrock's appeal to the review panel did not result in a reduction of the award. Section 48-125 provides, in relevant part:

> If the employer files an application for review before the compensation court from an award of a judge of the compensation court and fails to obtain any reduction in the amount of such award, the compensation court shall allow the employee a reasonable attorney's fee to be taxed as costs against the employer for such review . . . .

Dawes contends "[t]he review panel rejected all of defendants' assigned errors." Brief for appellant at 49.

Dawes' argument is not entirely accurate. As previously noted, the review panel, finding merit in errors assigned by *both* sides, determined that the single judge erred in her calculation of Dawes' average weekly wage. The review panel remanded this issue for recalculation by the single judge, and no one contests that disposition before this court. " '[R]eduction in the amount of such award,' " within the meaning of § 48-125, ordinarily refers to the total amount of the award to the employee. *Miller v. Meister & Segrist*, 255 Neb. 805, 817, 587 N.W.2d 399, 408 (1998). Until

Dawes' average weekly wage is recalculated on remand, it will be impossible to tell whether or not Wittrock's application for review will have resulted in a decrease in Dawes' award. Consequently, whether or not Dawes is entitled to attorney fees for proceedings in the compensation court is a matter that must be determined by that court after the case is remanded to the single judge. The review panel did not err by failing to award attorney fees prior to the final determination of Dawes' award.

### COMPENSABILITY OF 1999 INJURY

The final issue we consider is presented by Wittrock's remaining assignment of error on cross-appeal. Wittrock assigns that the review panel erred in affirming the single judge's finding that Dawes' 1999 injury was the result of an accident within the meaning of the Nebraska Workers' Compensation Act. Specifically, Wittrock argues that Dawes failed to show that he missed work and sought medical treatment within a reasonably limited period of time after the presentation of his symptoms.

Under § 48-151(2), an accident is defined as "an unexpected or unforeseen injury happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury." We have previously recognized that under § 48-151(2), three elements must be demonstrated in order to prove that a workers' compensation injury is the result of an accident: (1) the injury must be unexpected or unforeseen, (2) the accident must happen suddenly and violently, and (3) the accident must produce at the time objective symptoms of injury. *Fay v. Dowding, Dowding*, 261 Neb. 216, 623 N.W.2d 287 (2001).

Wittrock argues that in order to occur "suddenly and violently," the cumulative effects of repeated work-related trauma must produce objective symptoms requiring discontinuance of employment "within a reasonably limited period of time." See *Vencil v. Valmont Indus.*, 239 Neb. 31, 32, 473 N.W.2d 409, 411 (1991), *disapproved, Jordan v. Morrill County*, 258 Neb. 380, 603 N.W.2d 411 (1999). See, also, *Maxson v. Michael Todd & Co.*, 238 Neb. 209, 469 N.W.2d 542 (1991), *disapproved, Jordan, supra.* But we disapproved *Vencil* and *Maxson* in *Jordan.* In *Jordan*, we explained that for purposes of the Nebraska Workers' Compensation Act, "suddenly and violently" does not mean

instantaneously and with force, but, rather, the element is satisfied if the injury occurs at a identifiable point in time requiring the employee to discontinue employment and seek medical treatment. Accord, *Fay, supra*; *Frank v. A & L Insulation*, 256 Neb. 898, 594 N.W.2d 586 (1999).

We have stated that most jurisdictions regard the time of an accident as sufficiently definite, for purposes of proving this element, "if either the cause is reasonably limited in time *or the result materializes at an identifiable point.* 1B Larson, Workmen's Compensation Law § 39.00 (1980)." (Emphasis in original.) *Sandel v. Packaging Co. of America*, 211 Neb. 149, 161, 317 N.W.2d 910, 917 (1982). Accord, *Erving v. Tri-Con Industries*, 210 Neb. 339, 314 N.W.2d 253 (1982); *Crosby v. American Stores*, 207 Neb. 251, 298 N.W.2d 157 (1980). See, also, *Vencil, supra* (Shanahan, J., dissenting); *Maxson, supra* (Grant, J., dissenting). We have

> extended the concept of "suddenly and violently" to recognize the realities of life and the fact that an accident, within the meaning of the Nebraska Workmen's Compensation Act, could be caused by a series of repeated traumas, each of which acting individually may not be sufficient in force to produce a sudden and violent accident but which ultimately produces such a result, and none of which may be observable until disability occurs.

*Sandel*, 211 Neb. at 159-60, 317 N.W.2d at 916. The nature of the human body being such that it is, not all injuries to the body are caused instantaneously and with force, but may indeed nevertheless occur suddenly and violently, even though they have been building up for a considerable period of time and do not manifest themselves until they cause the employee to be unable to continue his or her employment. *Id.*

Wittrock argues that Dawes did not discontinue his employment within a reasonably limited period of time after the manifestation of his symptoms. Even if this were true, however, Wittrock does not argue, nor would the record support a finding, that Dawes' injury did not occur at an identifiable point in time, October 1999, within the meaning of *Jordan, supra*. Wittrock's final assignment of error is without merit.

## CONCLUSION

The review panel correctly determined that this case presents no evidence of an occupational disease and that Dawes' medical expenses resulting from his 1996 injury were time barred by § 48-137. Those determinations are affirmed. The review panel erred, however, in instructing the single judge, on remand, to reconsider her findings regarding Dawes' loss of earning capacity and the end date of Dawes' period of temporary total disability. The judgment of the review panel is reversed with respect to those instructions. The review panel did not err in instructing the single judge, on remand, to explain or amend her disposition of the claimed medical expenses to which the original award did not speak, and that instruction is affirmed.

The review panel erred in instructing the single judge to determine the subrogation interest of Principal, Dawes' health insurance carrier, and the single judge erred in finding that Principal should be reimbursed for payments it made on Dawes' behalf. The Workers' Compensation Court does not have jurisdiction to make those findings. The judgment of the review panel on this issue is reversed, and the review panel is directed to reverse the single judge's order with respect to this issue as well.

Finally, the review panel did not err by finding a reasonable controversy, by not awarding attorney fees at this stage of the proceedings, or by affirming the single judge's determination that Dawes' 1999 injury was the result of an accident within the meaning of the Nebraska Workers' Compensation Act. Those determinations are affirmed. In sum, the judgment of the review panel of the Workers' Compensation Court is affirmed in part, and in part reversed, and the cause is remanded with directions.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.