GONZALO VEGA, APPELLEE AND CROSS-APPELLANT,
v. IOWA BEEF PROCESSORS, INC.,
APPELLANT AND CROSS-APPELLEE.
699 N.W.2d 407

Filed July 22, 2005.    No. S-04-1181.

Riko E. Bishop and Joseph F. Bachmann, of Perry, Guthery, Haase & Gessford, P.C., L.L.O., for appellant.

Joseph C. Dowding, of Dowding, Dowding & Dowding, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.
## NATURE OF CASE
Between 1994 and 1996, Gonzalo Vega suffered four separate injuries while employed by Iowa Beef Processors, Inc. (IBP). A single judge of the Nebraska Workers' Compensation Court found

these injuries to be compensable and ordered IBP to pay for future medical costs reasonably necessary as a result of Vega's accidents and resulting injuries.

In the instant case, the single judge entered an award in which it found that exploratory testing related to Vega's intestinal problems and Vega's need for back surgery were compensable medical expenses. The review panel affirmed the decision of the single judge with regard to medical expenses related to Vega's back surgery, but reversed regarding expenses related to his intestinal problems. The review panel also remanded the case to the single judge for his determination of whether certain medical expenses, which were not addressed in the single judge's order, were related to Vega's March 1996 accident. IBP appeals, and Vega cross-appeals, the review panel's decision.

## BACKGROUND

In four separate accidents during 1994 and 1996, Vega suffered injuries to his right shoulder, right knee, left elbow, and lower back, all while employed with IBP. These injuries were found to be compensable by the single judge, and Vega was assigned permanent functional impairments for his right shoulder, right knee, and left elbow injuries, and a loss of earning capacity for his low-back injury. As a result of the single judge's findings, IBP was ordered to pay Vega permanent partial disability benefits for each of the injuries and current and future medical expenses which are reasonable and necessary. See *Vega v. Iowa Beef Processors*, 264 Neb. 282, 646 N.W.2d 643 (2002).

In the present appeal, the compensability of Vega's injuries and the single judge's 1998 award are not contested. Instead, the parties dispute the compensability of certain medical expenses related to Vega's back and digestive system.

In 1998, Vega sought medical treatment for gastrointestinal problems. Vega's medical records reflect that his physicians believed that his gastrointestinal problems were related to his diet and his weight. He was therefore advised to lose weight. Vega's medical records also reflect that he advised his physicians that he had been unable to take nonsteroidal, anti-inflammatory medication prescribed for his compensable right knee injury because the medication bothered his stomach. This in turn exacerbated Vega's

compensable right knee injury. At the request of his physician, Vega underwent the following additional treatments: a right upper quadrant ultrasound; an endoscopic examination of his esophagus, stomach, and duodenum; a CAT scan of his upper abdomen; and a small bowel study. Following these tests, it was determined that Vega's gastrointestinal problems were caused by Vega's general state of obesity, not the medication he was taking for his right knee problems.

Between 1997 and June 2000, Vega did not seek additional treatment for compensable injuries other than his right knee. However, Vega's medical records reflect that in June 2000, he complained of back pain which began while he was playing with a child. At that time, Vega was given a low-back injection. The record is again silent with regard to Vega's back complaints until February 2001, when Vega was hospitalized following a motor vehicle accident in which he suffered a fracture of L2. Thereafter, Vega was seen by Dr. David Benavides, who noted that Vega complained of low-back problems which had been going on intermittently for several years. At the request of Benavides, Vega underwent an MRI, which revealed disk herniations with a history of a previous fracture at L2. Benavides recommended a diskogram, or radiograph of his intervertebral disks, and advised Vega that he would be a candidate for a spinal fusion. Vega underwent the diskogram, which showed positive findings at L4-5 and L5-S1. Following the diskogram, Benavides recommended that Vega undergo a posterior decompression and stabilization of the disks at L4-5 and L5-S1, as well as a fusion.

At the heart of the parties' dispute regarding the compensability of certain treatment for Vega's back injury are contradictory opinions by Benavides. On December 6, 2001, IBP wrote a letter to Benavides asking him to answer the following hypothetical questions:

> 1. Absent specific trauma, aggravation in the work place since May 22, 1997 and no reported pain since 1997, are you able to state within a reasonable degree of medical certainty that the current low back complaints are still a continuation [of] work activities at IBP? . . .

> If yes, please explain the lack [of] reported pain over the last four years[.]

2. Could this condition just as likely be the result of pre-existing factors . . . ?

In response to IBP's inquiry, Benavides responded on December 11, 2001, that Vega's "symptoms may be due to degenerative changes which in turn may have been accelerated by work related activities." Thereafter, on January 4, 2002, in response to a letter from Vega's attorney, Benavides stated as follows:

I have reviewed the prior medical records of . . . Vega, including the prior MRI of January 11, 1997 as well as [another physician's] records of September 4, 1996 and October of 1996 wherein he states within a reasonable degree of medical certainty . . . Vega's low back condition is an aggravation of a pre-existing condition he sustained doing cumulative repetitive work on the job site. He subsequently assigned him a 2% whole body permanent impairment and a 35 to 50 pound lifting restriction. [The other physician's] narrative report of June 14, 1996 and the office notes from the March 14, 1996 through January 9, 1997 are reviewed as well. With this information as well as the detailed history taken from . . . Vega and his examination, I am of the opinion that within a reasonable degree of medical probability . . . Vega's ongoing low back problems necessitating treatment are a continuation or reoccurrence of his original compensable work related accident on March 14, 1996.

I believe his need for low back fusion is a result of the aggravation of his pre-existing degenerative back condition relating back to his original March 4, 1996 aggravation while working at IBP.

I was in receipt of a request for information from [IBP's attorney] on December 6, 2001 where specifically I was asked about absent specific trauma, where the current low back complaints are still a continuation of work related activities at IBP. That was answered in the negative, but further discussion and explanation noted that his symptoms may be due to the degenerative changes which in turn may have been accelerated by the work related activities.

A hearing was held before the single judge to determine whether medical expenses related to Vega's gastrointestinal problems and low-back problems, including the recommended back

surgery, were compensable. The single judge entered an award in which he found that medical expenses incurred to explore and investigate the causal nexus, if any, between Vega's gastrointestinal problems and his knee injury were compensable under *Pavel v. Hughes Brothers, Inc.*, 167 Neb. 727, 94 N.W.2d 492 (1959). The single judge further found that medical expenses related to Vega's current low-back complaints were compensable and ordered IBP to pay for Vega's recommended surgery. IBP appealed to the review panel, which affirmed the decision of the single judge on the issue of the compensability of medical expenses related to Vega's low-back complaints and reversed the single judge's finding with regard to compensability of medical expenses related to Vega's gastrointestinal problems. The review panel also remanded the case back to the single judge on the issue of the compensability of certain medical expenses which were not addressed by the single judge in his award. IBP appeals the review panel's decision, and Vega cross-appeals.

## ASSIGNMENTS OF ERROR

IBP asserts (1) the single judge's determination, as affirmed by the review panel, that Vega's current back problems are causally related to the March 1996 accident was clearly wrong and contrary to law and (2) the review panel's remand for further findings regarding outstanding medical expenses in exhibit 8, which were not addressed in the single judge's award, was clearly wrong and contrary to law.

In his cross-appeal, Vega asserts that the review panel erred in reversing the single judge's award requiring IBP to pay certain bills related to the diagnosis of Vega's gastrointestinal problems.

## STANDARD OF REVIEW

■ Pursuant to Neb. Rev. Stat. § 48-185 (Reissue 2004), an appellate court may modify, reverse, or set aside a compensation court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Zoucha v. Touch of Class Lounge*, 269 Neb. 89, 690 N.W.2d 610 (2005).

■ In determining whether to affirm, modify, reverse, or set aside a judgment of the compensation court review panel, a higher appellate court reviews the findings of fact of the single judge who conducted the original hearing; the findings of fact of the single judge will not be disturbed on appeal unless clearly wrong. *Swoboda v. Volkman Plumbing*, 269 Neb. 20, 690 N.W.2d 166 (2004).

## ANALYSIS

### COMPENSABILITY OF CURRENT BACK PROBLEMS

IBP argues that the single judge and review panel erred by finding that Vega's current back symptoms are causally related to Vega's March 1996 accident. At oral argument, IBP urged this court to set a threshold which the evidence must meet in order for it to be considered competent medical evidence. IBP argues that the medical evidence presented in the instant case falls below that as yet unstated threshold. We decline IBP's invitation. As explained below, we determine that the medical evidence in the present case was competent and supports the single judge's finding as to the compensability of Vega's low-back pain.

■ The determination of causation is, ordinarily, a matter for the trier of fact. *Kerkman v. Weidner Williams Roofing Co.*, 250 Neb. 70, 547 N.W.2d 152 (1996). In testing the sufficiency of the evidence to support the findings of fact made by the compensation court, the evidence must be considered in the light most favorable to the successful party. *Sherwood v. Gooch Milling & Elevator Co.*, 235 Neb. 26, 453 N.W.2d 461 (1990). As the trier of fact, the compensation court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Kerkman v. Weidner Williams Roofing Co., supra*; *Toombs v. Driver Mgmt., Inc.*, 248 Neb. 1016, 540 N.W.2d 592 (1995).

Pursuant to § 48-185(3), this court may modify, reverse, or set aside a compensation court decision where there is not sufficient competent medical evidence in the record to warrant the making of the order, judgment, or award. We determine that the record in the instant case contains sufficient competent evidence to allow the single judge to determine that Vega's current back complaints are causally related to his March 1996 accident. Vega's treating physician, Benavides, opined that "within a reasonable degree of

medical probability . . . Vega's ongoing low back problems necessitating treatment are a continuation or reoccurrence of his original compensable work related accident on March 14, 1996." At trial, Vega testified that since leaving the employment of IBP and retaining employment elsewhere, he had not experienced more pain than he had had on the date of his accident. Vega further testified that he had not experienced any pain, aside from that pain which he already feels, while lifting his child; that the pain he felt following his 2001 automobile accident was in a different location than the pain felt as a result of his March 1996 accident; and that he felt he had fully recovered from his automobile accident.

IBP argues that the conflicting opinions of Benavides to IBP's and Vega's attorneys do not establish the causal relationship between the compensable back injury and the current and projected medical charges with regard to Vega's back. A review of IBP's inquiry, however, reveals that IBP presented Benavides with hypothetical questions which did not accurately reflect the facts of the case. In IBP's inquiry, it asked Benavides to issue an opinion based upon facts that indicated Vega had not reported any back pain between 1997 and 2000. The record reflects, however, that Vega reported back problems which had been going on intermittently for several years. Benavides' report to Vega's attorney, on the other hand, is based on the review of Vega's prior medical records, a review of his MRI, and another physician's records and ratings wherein that physician stated with reasonable medical certainty that Vega's back condition is an aggravation of the preexisting condition he sustained doing repetitive work on the job.

In light of the foregoing, we determine that with regard to Vega's back, there is sufficient, competent medical evidence in the record to warrant the decision of the review panel. Thus, IBP's first assignment of error is without merit.

UNCOMPENSATED MEDICAL EXPENSES

Exhibit 8 is a list of Vega's outstanding medical expenses. The review panel found:

There are other medical expenses contained in Exhibit 8, which the Court did not discuss or rule on which may or

may not be related to the accident and injury of 1996. The review panel will therefore remand to the trial court for further findings the amount of outstanding medical expenses, if any, in Exhibit 8, except for the excluded gastrointestinal problems previously discussed.

Vega had cross-appealed to the review panel the single judge's failure to address the compensability of those expenses in his award, and the review panel had remanded the case to the single judge for further findings regarding the compensability of those medical expenses, except where they related to Vega's gastrointestinal problems. IBP claims the review panel was clearly wrong to remand the matter because the single judge's silence on the issue should be interpreted as a denial of the compensability of the expenses.

IBP relies on *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. 526, 667 N.W.2d 167 (2003), for the proposition that the silence of the single judge's order regarding some of Vega's claimed medical expenses should be interpreted as a denial of those expenses. In *Dawes*, we faced circumstances comparable to those of the instant case, in that the employee claimed certain medical expenses that were not discussed in the single judge's final award. However, in *Dawes*, we confronted two related but separate questions: (1) whether the single judge's award was a final, appealable order and (2) whether the single judge's omissions were erroneous. We concluded, as IBP correctly notes, that for purposes of determining the finality of the order, the silence of the single judge's order for relief not spoken to must be construed as a denial of those requests under the circumstances. We specifically noted, however, that while the single judge's omissions were not fatal to the finality of the award, they could nonetheless constitute error requiring reversal or remand of the case, as the failure of the single judge to clearly determine an issue may not provide the basis for "meaningful appellate review" required by Workers' Comp. Ct. R. of Proc. 11 (2000). In other words, while the single judge's failure to make necessary findings is not a jurisdictional defect, it may nonetheless be error requiring a remand for a complete determination of all the issues.

In *Dawes v. Wittrock Sandblasting & Painting, supra,* the review panel directed the single judge, on remand, to dispose of

the two medical bills to which the single judge did not speak. We stated in *Dawes*:

> [W]e do not conclude that the review panel erred in remanding this issue to the single judge. The single judge listed all of the medical expenses she found to be compensable, but expressly denied compensation for other medical expenses, one of which lacked a supporting medical record, and the remainder of which were incurred prior to the 1999 injury. The single judge's award simply does not mention the expenses noted above. We agree with the review panel that it cannot be discerned, from the single judge's award, why those expenses were omitted. In that respect, the single judge's award does not meet the requirements of rule 11, because we are unable to conduct a "meaningful appellate review."

266 Neb. at 548, 667 N.W.2d at 188.

The facts in *Dawes* are identical to the facts in the present case in all relevant respects. Here, the single judge awarded the expenses with regard to Vega's back condition and denied the expenses connected with his gastrointestinal problems. All of these expenses were set forth in exhibit 8. The balance of the expenses listed in exhibit 8 were not spoken to by the single judge.

We determine, therefore, that the review panel did not err in remanding the case for further findings by the single judge with regard to exhibit 8.

### COMPENSABILITY OF MEDICAL EXPENSES INCURRED TO DETERMINE CAUSE OF VEGA'S STOMACH PROBLEMS

On cross-appeal, Vega argues that the single judge properly found that all charges associated with determining the cause of his gastrointestinal problems were compensable and that the review panel erred in reversing this decision. In reaching this conclusion, the single judge relied on our decision in *Pavel v. Hughes Brothers, Inc.*, 167 Neb. 727, 94 N.W.2d 492 (1959), wherein we allowed the recovery of medical expenses incurred to determine whether an employee's continued disability related to his work-related accident. In reaching that conclusion, we noted that from the record, it was obvious that expenses were incurred in an attempt to "eliminate as well as to determine causes of

plaintiff's continued disability." *Id.* at 739, 94 N.W.2d at 499. On appeal, the review panel found that the facts in *Pavel* are distinguishable. We agree with the review panel.

In *Pavel v. Hughes Brothers, Inc., supra,* the employee underwent surgery for a compensable back injury, but nevertheless continued to be disabled despite the surgically satisfactory procedure. While the question of another surgical operation was pending, the employee incurred additional medical expenses which the employer refused to pay. We held that the expenses were compensable because it was clear from the record that the expenses were incurred in an effort to eliminate as well as to determine the cause of the employee's continued disability. In the present case, there is no medical evidence causally relating Vega's gastrointestinal problems to his compensable knee injury. To the contrary, the record reflects that Vega's physicians were of the opinion Vega's gastrointestinal problems were related to his diet and obesity and that it was Vega who attributed his gastrointestinal problems to the medication prescribed for his knee injury. Absent any medical evidence that Vega's gastrointestinal problems were causally related to a compensable injury, we agree with the review panel that the single judge erred in awarding payment for medical expenses incurred to determine the cause of the problems. We therefore affirm the review panel's decision on this issue.

## CONCLUSION

For the reasons discussed above, we affirm the decision of the review panel.

AFFIRMED.