IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

WILSON V. WASTE CONNECTIONS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

CRAIG M. WILSON, APPELLANT,

V.

WASTE CONNECTIONS, INC., APPELLEE.

Filed November 3, 2015.   No. A-14-1162.

Appeal from the Workers' Compensation Court: MICHAEL K. HIGH, Judge. Affirmed in part, and in part reversed and remanded with directions.

Mark R. McKeone, P.C., L.L.O., for appellant.

Melvin C. Hansen, of Hansen, Lautenbaugh & Buckley, L.L.P., for appellee.

IRWIN, INBODY, and RIEDMANN, Judges.

RIEDMANN, Judge.

INTRODUCTION

Craig M. Wilson appeals an award from the Nebraska Workers' Compensation Court. After our review of the record, we find that the compensation court failed to provide a well-reasoned opinion as required by Workers' Compensation Court Rule 11A on the issues of vocational rehabilitation and waiting time penalties/attorney fees, but that the remainder of Wilson's assignments of error are without merit. Therefore, we affirm in part and in part reverse, and remand the cause with directions to enter an award consistent with Rule 11A.

BACKGROUND

In July 2009, Wilson was employed by Waste Connections, Inc. (Waste Connections) hauling waste in a "roll-off" dumpster truck. On the morning of July 30, Wilson was attempting

to place a tarp on top of a dumpster when he slipped and fell about 10 feet to the ground. Wilson testified that he remembered putting his right arm out in front of him to protect his head from the fall, but that he could not describe exactly what happened because he lost consciousness for a time after striking the ground. Wilson informed his employer of the fall, but continued working the remainder of his shift.

*Medical Evidence.*

Carol Hoffman (Hoffman), a health care professional working with Wilson's primary physician, examined Wilson on the day of his injury. After noting pain in his right shoulder, left wrist, abdomen, chest, hand, and back, she ordered x-rays and CT scans. All of the radiology reports were normal with no acute abnormalities. When physical therapy did not relieve his pain, Hoffman referred Wilson to an orthopedic specialist, Dr. Mark McKenzie, for further examination of his shoulder. In late 2009, Wilson underwent surgery on his right knee for a meniscus tear and on his right shoulder for rotator cuff and labrum tears.

In April 2010, Dr. Craig Bartruff, Wilson's primary physician, ordered an abdominal ultrasound on Wilson. The ultrasound technician noted that "an area from the epigastric region to the umbilicus [was] 'bulged out.' This finding is felt to be related to a July, 2009 injury." However, the notes also concluded that this was a "limited study" with "no abnormality seen."

In July 2010, Wilson had a second procedure on his right shoulder in an attempt to manipulate the joint and improve the range of motion of his "frozen" shoulder. Wilson underwent physical therapy for his shoulder and also was fitted with an "unloader brace" on his knee.

*Maximum Medical Improvement.*

Dr. McKenzie opined that Wilson had reached maximum medical improvement (MMI) with respect to his right knee on May 17, 2010. In December 2010 Wilson underwent a functional capacity exam. In January 2011, Dr. McKenzie assigned an 11 percent impairment to Wilson's right shoulder and a 2 percent impairment to Wilson's right knee. Dr. McKenzie discussed lifting restrictions of up to 30 pounds intermittently, with no overhead work. A physician performing an independent medical exam (IME) in January 2011 agreed with Dr. McKenzie's placement of Wilson's knee and shoulder at MMI. The IME doctor assigned Wilson a 13 percent upper extremity impairment and a 7 percent lower extremity impairment. The IME doctor also assigned Wilson lifting restrictions of 25 pounds from waist to shoulder, 100 pounds from floor to waist, no lifting above shoulder, and a maximum carry weight of 50 pounds.

*Vocational Rehabilitation.*

In early 2012, Wilson enrolled in vocational rehabilitation job placement services with Ronald Schmidt for 90 days but did not find a position through those services. Wilson testified that he and Schmidt originally discussed a vocational rehabilitation plan involving job placement services for up to 180 days with the possibility of education if he did not have suitable employment after 180 days. However, after the first 90 day term of job placement services, his vocational rehabilitation services were terminated because Schmidt determined Wilson did not need assistance with job search and networking skills. Schmidt performed a loss of earning capacity

analysis and assigned Wilson a 35 to 40 percent loss of earning capacity, which the compensation court adopted. Schmidt's analysis was based in part upon the restrictions imposed by Dr. McKenzie.

In late 2012, after the end of Wilson's vocational rehabilitation benefits, he accepted a position as a delivery route driver for a subcontractor of Federal Express (FedEx Ground). Wilson's job duties consist of loading his truck in the morning and then driving a 300 mile route delivering packages to people's homes and businesses along the route. Wilson testified that approximately 50 percent of his packages weigh over 25 pounds, but that he performs the work by sliding packages, using a two-wheeled cart, and at times asking customers for assistance. He stated that he is in a great deal of discomfort by the end of the work day, but that he has not missed any work due to his work-related injuries. Wilson states that he currently earns $675 per week, which is less than his previous wage of $789 per week. He also states that he refused a promotion to a longer route because he felt physically unable to handle it. He testified that he accepted his current position because he had applied for over 300 jobs during his vocational rehabilitation services and had been unable to find work.

Records submitted to the compensation court show that Waste Connections made temporary total disability and permanent partial disability payments to Wilson from October 2009 through August 2012. After a gap in payment, payment resumed on March 3, 2014. The indemnity payment records and compensation court findings demonstrate that Waste Connections had overpaid Wilson at the time payment ceased in August 2012 and had again overpaid him by the time of trial.

## ASSIGNMENTS OF ERROR

Wilson assigns, restated and reordered, that the compensation court erred in (1) failing to award vocational rehabilitation; (2) failing to award future medical expenses for treatment of Wilson's knee and shoulder injuries; (3) finding no foundation for and disregarding Dr. Bartruff's causation opinion as to Wilson's abdominal injuries; (4) failing to award future medical expenses for the abdominal injury; (5) failing to award a waiting time penalty, interest, and attorney fees on the indemnity award; and (6) failing to provide a reasoned opinion as required by Rule 11A.

## STANDARD OF REVIEW

A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Hynes v. Good Samaritan Hosp.*, 285 Neb. 985, 830 N.W.2d 499 (2013). On appellate review, the factual findings made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Gardner v. Int'l Paper Destruction & Recycling*, 291 Neb. 415, 865 N.W.2d 371 (2015). In workers' compensation cases, an appellate court is obligated to make its own determinations regarding questions of law. *Id.*

ANALYSIS

*Vocational Rehabilitation.*

Wilson's first assignment of error is that the compensation court erred in failing to award further vocational rehabilitation benefits to him. Nebraska workers' compensation law provides that

> [w]hen as a result of the injury an employee is unable to perform suitable work for which he or she has previous training or experience, he or she is entitled to such vocational rehabilitation services, including job placement and training, as may be reasonably necessary to restore him or her to suitable employment.

Neb. Rev. Stat. § 48-162.01 (Cum. Supp. 2014). Our cases have previously held that "if one is able to return to work, he or she is not entitled to vocational rehabilitation." *Visoso v. Cargill Meat Solutions*, 18 Neb. App. 202, 214, 778 N.W.2d 504, 514 (2009). However, the Nebraska Supreme Court has refined this point of law, focusing on the statutory objective of restoring an employee to not just any employment but to *suitable* employment. *Yager v. Bellco Midwest*, 236 Neb. 888, 464 N.W.2d 335 (1991). An employee may still be entitled to vocational rehabilitation if he has taken a job which pays significantly less than he was making before an accident because a significantly lower-paying job is not "suitable," or comparable, employment. *Id.*

On appeal, Wilson argues that although he has worked in a job delivering packages, he should still be entitled to further vocational rehabilitation because this job is not "suitable employment" as it requires him to exceed the physical restrictions set by his doctor. Nebraska appellate courts have not addressed whether a worker who voluntarily takes a job that exceeds his physical restrictions may be found to enjoy "suitable" employment so as to preclude him from vocational rehabilitation benefits.

Whether an injured worker is entitled to vocational rehabilitation is ordinarily a question of fact to be determined by the Workers' Compensation Court. *Stacy v. Great Lakes Agri Mktg., Inc.*, 276 Neb. 236, 753 N.W.2d 785 (2008). However, the proper construction and application of statutory terms is a question of law. *Yager v. Bellco Midwest*, *supra*. Therefore, this case presents a mixed question of fact and law--first, the factual question of whether Wilson's job as a FedEx route driver exceeds his physical restrictions in this case, and if they do, then the legal question of whether work that exceeds restrictions is "suitable" employment under § 48-162.01.

We are unable to reach the legal question here because the award is silent on the factual evidence that informs its brief discussion of this issue. Workers' Compensation Court Rule 11A requires that "[d]ecisions of the court shall provide the basis for a meaningful appellate review. The judge shall specify the evidence upon which the judge relies." Although silence on an issue constitutes denial of the relief requested, Rule 11A may require remand for an award that specifies the evidence upon which a judge relies in making such a denial. See *Vega v. Iowa Beef Processors*, 270 Neb. 255, 699 N.W.2d 407 (2005); *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. 526, 667 N.W.2d 167 (2003), *disapproved on other grounds, Kimminau v. Uribe Refuse Serv.*, 270 Neb. 682, 707 N.W.2d 229 (2005). See, also, *Wildman v. George Witt Service*, No. A-14-193, 2014 WL 6172853 (Neb. App. Nov. 4, 2014) (selected for posting to court Web site); *Bielenberg*

- 4 -

*v. Brodkeys Carpet One Omaha*, No. A-05-807, 2006 WL 538211 at *4 (Neb. App. Mar. 7, 2006) (not designated for permanent publication).

The compensation court's award contains no explicit discussion or denial of vocational rehabilitation benefits. It addresses vocational rehabilitation only implicitly, stating in its summary of Wilson's testimony that Wilson "can perform this [FedEx Ground delivery] job and this is suitable employment." The award does not specify the evidence upon which the compensation court relies in defining the delivery job as "suitable" employment. Without factual discussion of this issue, we cannot determine whether the compensation court considered the contention that Wilson's FedEx Ground delivery job exceeds his physical restrictions nor what its factual findings are on this issue. Accordingly, we are unable to provide meaningful appellate review. We remand for further findings of fact and conclusions of law regarding the extent of Wilson's physical restrictions, whether the compensation court finds his employment to exceed those restrictions, and what evidence the court relies on in denying further vocational rehabilitation benefits.

*Future Medical Expenses for Right Knee and Shoulder.*

Wilson next assigns that the compensation court erred in failing to award future medical expenses. We disagree.

Under Nebraska law, an award of future medical expenses must be based upon a stipulation of the parties or explicit evidence that future medical treatment is reasonably necessary to relieve the injured worker from the effects of the work-related injury. *Adams v. Cargill Meat Solutions*, 17 Neb. App. 708, 774 N.W.2d 761 (2009). The parties here did not stipulate to the need for future medical care. Therefore, the compensation court could only award future medical expenses to Wilson if the evidence supported an explicit showing that future treatment is reasonably necessary to relieve Wilson from the effects of the work-related injury. *Adams v. Cargill Meat Solutions*, *supra*.

The compensation court is the sole judge of the credibility and weight to be given medical opinions, even when the health care providers do not give live testimony. *Damme v. Pike Enterprises, Inc.*, 289 Neb. 620, 856 N.W.2d 422 (2014). Although Dr. Bartruff submitted a check-box "Medical Questionaire" [sic] on which he checked "Yes" to the statement "it is my opinion within a reasonable degree of medical certainty that the injuries sustained by Craig Wilson . . . have not yet been resolved . . . and that further medical treatment . . . is necessary," the compensation court discredited this exhibit as lacking foundation. The Nebraska Supreme Court has also disfavored "checkbox" medical opinions, stating:

> An expert opinion that consists of an X on a questionnaire that details no factual basis for the opinion or the expert's reasoning behind the opinion may [lack] . . . credibility or weight[;] . . . [t]he value of an opinion of an expert is no stronger than the facts upon which it is based.

*Liberty v. Colonial Acres Nursing Home*, 240 Neb. 189, 194, 481 N.W.2d 189, 193 (1992). Because the compensation court is the sole judge of the credibility of medical opinions, we defer to the compensation court's determination that the opinions contained in exhibit 14 were not credible. *See Damme v. Pike Enterprises*, *supra*.

With Dr. Bartruff's opinion on future medical care discredited, the record does not contain an explicit opinion as to the reasonable necessity of future medical care. Dr. McKenzie, the surgeon treating Wilson's shoulder and knee, stated that he would see Wilson in the future on an "as needed" basis. The doctor performing the IME stated that Wilson's knee "might require further surgical intervention . . . if his joint space should continue to narrow." Wilson points to records from a visit with Dr. Bartruff one year before the compensation trial in which Dr. Bartruff mentioned getting an MRI of the shoulder and knee for further evaluation. None of these opinions states that future medical care is reasonably necessary nor that any specific care would relieve the effects of Wilson's work-related injuries. Although Wilson testified that Dr. Bartruff referred him to an orthopedic surgeon for his knee on the day before trial, medical evidence of this referral is not in the record.

Wilson also argues that the compensation court should have awarded him a re-fitted knee brace as future medical care. Medical records reflect that Wilson was fitted with a knee brace in 2010 and that both Dr. McKenzie and Dr. Ihle stated that it was an appropriate device for him to use when working. Wilson testified at trial that his knee brace no longer fits because he has lost weight. Although Wilson testified that he needed a re-fitted knee brace, no medical evidence in the record shows that refitting a new brace would currently be reasonably necessary and effective to relieve Wilson's work-related injury. Because evidence in the record does not establish the explicit necessity of future medical care, the compensation court did not err in declining to award such care.

Wilson argues that under Rule 11A, the award must be reversed because it is silent on this issue. However, absent a stipulation or a sufficient expert opinion, the compensation court could not have awarded future medical expenses. See *Adams v. Cargill Meat Solutions*, *supra*. Given that the compensation court specifically rejected the only explicit medical opinion on future medical care contained in the record, the remaining record does not support an award of future medical. Therefore, we do not require further findings to conduct meaningful appellate review on this issue and any Rule 11A error would be harmless. Accordingly, we affirm the compensation court's award denying future medical expenses.

*Abdominal Injury.*

Wilson next assigns that the compensation court clearly erred in rejecting Dr. Bartruff's "check box" medical questionnaire opinion that Wilson's abdominal injury is related to his fall. We note that

> [t]he Workers' Compensation Court is the sole judge of the credibility and weight to be given medical opinions, even when the health care providers do not give live testimony. Resolving conflicts within a health care provider's opinion also rests with the court, as the trier of fact.

*Damme v. Pike Enterprises*, *supra*.

In rejecting this exhibit, exhibit 14, the compensation court states that "[t]he opinions in this report are disregarded as there is no foundational evidence in the record for the opinions such as office notes or other records from Dr. Bartruff to establish that his opinions have any sufficient foundational basis." Wilson argues that this statement is clear error because the record contains

office notes from Hoffman, a 2010 ultrasound ordered by Dr. Bartruff, and office notes from a 2013 physical examination by Dr. Bartruff that provide foundation for his opinion. After our review of the record, we find that the compensation court was within its power to discredit exhibit 14, and its reasoning for excluding the exhibit does not constitute clear error.

The compensation court considered and rejected Hoffman's office notes as foundation for causation, stating that:

> [t]here is some reference in the immediate medical records of Dr. Hoffman that plaintiff complained of abdominal pain from his mid sternum to his umbilicus. However, there was no follow-up for this whatsoever and there is no sufficient medical opinion on causation about it occurring.

Although Hoffman noted tenderness and bulging in the abdomen on the date of the injury, her follow-up the next week indicates only some bulging and not much pain in the abdomen. The compensation court was within its power to reject Hoffman's notes as foundation for Dr. Bartruff's causation opinion. *See Damme v. Pike Enterprises*, *supra*.

The record contains two sets of "office notes of Dr. Bartruff" that discuss the abdomen. Dr. Bartruff performed a full physical examination of Wilson two months after the accident. Although he examined the abdomen, Dr. Bartruff's notes at this time do not mention injury to the abdomen; they state that that Wilson's abdomen has no tenderness and the record contains no mention of bulging. As this record does not discuss abdominal injury, the compensation court is not clearly wrong in finding that this record is not foundational evidence for Dr. Bartruff's causation opinion. The record also contains office notes of Dr. Bartruff from a July 2013 physical examination in which he discusses a division in the midline of Wilson's abdomen. However, this examination occurred nearly 4 years after the injury and does not discuss causation. Therefore, we also cannot say that the compensation court is clearly wrong in failing to consider these office notes as evidence in the record that provide foundation for Dr. Bartruff's causation opinion.

Wilson finally argues that the court is clearly wrong in stating that "no office notes or other records from Dr. Bartruff" provide foundation for his opinions because the record contains a 2010 ultrasound ordered by Dr. Bartruff. However, this ultrasound record appears only to contain the notes of the ultrasound technician and does not appear to contain any analysis by Dr. Bartruff. Further, the ultrasound technician's conclusions appear to be conflicted as to whether an abdominal abnormality existed. The ultrasound record states that "an area from the epigastric region to the umbilicus [is] 'bulged out.'" However, the record also concludes that "no abnormality [was] seen." Given the sparse nature of the ultrasound comments and the lack of direct commentary by Dr. Bartruff, the compensation court was within its power to find that this report did not provide sufficient foundation for Dr. Bartruff's opinion.

Further, the opinion contained in exhibit 14 is a one-page "checkbox" medical opinion form that does not state the foundational evidence upon which Dr. Bartruff relied to form his causation opinion. As discussed above, the Nebraska Supreme Court has also disfavored "checkbox" medical opinions. *Liberty v. Colonial Acres Nursing Home*, *supra*. Accordingly, the court did not err in finding that Wilson failed to meet his burden to establish causation of the abdominal injury. Therefore, this assignment of error is without merit and we do not reach Wilson's subsequent assignment of error relating to future medical for the abdominal injury.

*Penalties and Fees.*

Wilson argues that the trial court erred in failing to address the issue of waiting time penalties or attorney fees. Nebraska workers' compensation law provides that

> [f]ifty percent shall be added for waiting time for all delinquent payments after thirty days' notice has been given of disability . . . [and] [w]henever the employer refuses payment of compensation or medical payments . . . or when the employer neglects to pay compensation for thirty days after injury . . . and proceedings are held before the compensation court, a reasonable attorney's fee shall be allowed the employee by the compensation court in all cases when the employee receives an award.

Neb. Rev. Stat. § 48-125 (2013). The award does not discuss the issue of waiting time penalties or attorney fees, which were requested in the petition and at trial. While the award states that defendant had overpaid the plaintiff by $4,245.48 at the time of trial, it does not address whether any payments were delinquent for at least 30 days during the 1.5 year period of nonpayment from August 2, 2012 to March 5, 2014, nor whether any reasonable controversy existed. While the court's silence on this issue acts as a denial of relief, the order is not well-reasoned under Rule 11A. *See Vega v. Iowa Beef Processors*, 270 Neb. 255, 699 N.W.2d 407 (2005). Accordingly, we cannot conduct meaningful appellate review on this issue. We remand for findings and discussion on the issue of attorney fees and waiting time penalties.

*Reasoned Opinion.*

Wilson argues that the compensation court did not provide a well-reasoned opinion as required by Rule 11A because the award does not discuss vocational rehabilitation, future medical expenses, or waiting time penalties and fees. These arguments are addressed above and we reiterated that the compensation court failed to provide a reasoned opinion as to vocational rehabilitation and waiting time penalties and fees. In all other respects, the award complies with Rule 11.

## CONCLUSION

After our review, we find that the compensation court's award fails to offer sufficient discussion of the evidence upon which it relies in denying future vocational rehabilitation and waiting time penalties and attorney fees. We find no other error by the compensation court. Accordingly, we remand for further findings on the issues of vocational rehabilitation and waiting time penalties and attorney fees, and affirm in all other respects.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.