IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


DUNCAN V. INFRASTRUCTURE & ENERGY ALTERNATIVES


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


MARTY DUNCAN, APPELLEE,

V.

INFRASTRUCTURE & ENERGY ALTERNATIVES, INC., APPELLANT.


Filed November 25, 2025.    No. A-25-226.


Appeal from the Workers' Compensation Court: JULIE A. MARTIN, Judge. Affirmed.

Patrick J. Mack, of Gilson Daub, L.L.P., for appellant.

Marty Duncan, pro se.


PIRTLE, WELCH, and FREEMAN, Judges.

WELCH, Judge.

## INTRODUCTION

Infrastructure & Energy Alternatives, Inc. (IEA), appeals from the order of the Nebraska Workers' Compensation Court finding that Marty Duncan remained temporarily totally disabled, had not reached maximum medical improvement, was entitled to disability benefits, and was entitled to future medical treatment. For the reasons stated herein, we affirm.

## STATEMENT OF FACTS

### BACKGROUND

In December 2023, the Workers' Compensation Court found that Duncan had "sustained an injury to his right shoulder as a result of an accident arising out of and in the course of his employment [with IEA] on December 31, 2019"; that he had not reached maximum medical improvement for his shoulder; that he was still unable to work; and that he had been temporarily and totally disabled from September 15, 2020, when his employment with IEA was terminated,

- 1 -

through the date of trial. The court held that, pursuant to the stipulation of the parties, Duncan was entitled to $855 per week in temporary total disability payments during the period he was temporarily disabled, and the court awarded Duncan payment of any future medical care necessitated by his shoulder injury. Duncan appealed to this court, which affirmed the Workers' Compensation Court's award in its entirety. IEA did not appeal or cross-appeal the Workers' Compensation Court's initial award. *Duncan v. IEA - Infrastructure & Energy Alternatives*, No. A-24-006, 2024 WL 4375868 (Neb. App. Oct. 1, 2024) (selected for posting to court website).

INTERVENING EVENTS

At the time of the prior award, Duncan had already undergone two shoulder surgeries but was still experiencing pain. Duncan's surgeon, Dr. Brian Levings, indicated that a third surgery might be necessary and that a cervical MRI was necessary to determine the cause of Duncan's pain and limitations. A cervical MRI was subsequently performed in May 2024 to assess the cause of Duncan's continued pain and limited range of motion. Following the MRI of Duncan's cervical spine, which revealed no significant findings, Duncan continued outpatient physical therapy utilizing a home exercise program and took pain relievers. Duncan then sought a follow up consultation with Dr. Levings on January 2, 2025. Dr. Levings' notes from that visit provided that Duncan's

> continued pain and weakness was discussed and is due to the patient's partial rotator cuff which correlates on his previous MRI. We explained the need for surgery which from his previous MRI, the rotator cuff tear is repairable with the possibility of a hyaluronic patch. . . . Continue with no use of the right arm.

Dr. Levings proposed a right shoulder arthroscopy with rotator cuff repair.

On January 11, 2025, Duncan received an email from IEA's counsel informing him that Dr. Ian Crabb issued a supplemental report, in which Dr. Crabb opined that another surgery was not reasonable and necessary, and which placed Duncan at maximum medical improvement as of January 8, 2025. The email also informed Duncan that IEA would no longer be authorizing any medical treatment and had suspended Duncan's temporary total disability (TTD) payments as of January 8.

MOTION TO ENFORCE AWARD AND HEARING

On January 17, 2025, Duncan filed a motion to enforce the court's prior temporary disability award. Duncan requested that the court reinstate his weekly TTD payments of $855; order IEA to pay for pain management costs associated with pain management treatment for his chronic right shoulder pain and torn rotator cuff; and order IEA to pay for right shoulder surgery and post-surgery home healthcare as prescribed by his treating physician, Dr. Brian Levings.

At the hearing on Duncan's motion to enforce, the court took judicial notice of the December 2023 award and Exhibits 8, 12, and 19. Further, the court received the following exhibits into evidence: a report related to a January 15, 2025, office visit signed by Dr. Levings, which proposed a right shoulder arthroscopy with rotator cuff repair; a January 9, 2025, fax to Dr. Levings informing him that Duncan's scheduled right shoulder surgery was denied and not authorized under workers' compensation; the January 11, 2025, email from IEA's counsel notifying Duncan

of the suspension of his TTD benefits and that IEA would no longer be authorizing any medical treatment; records from pharmacies detailing costs for Duncan's prescribed medications; and exhibit 25, a January 8, 2025, supplemental report from Dr. Crabb concluding that:

> Given [Duncan's] high level of function there is very little room for any improvement and with any surgery at this time <u>and</u> there is substantial room for complications. Nothing in the medical records that has been supplied to me gives me confidence that [another] rotator cuff repair is necessary or even has [a] significant chance of adding value to the outcome.
>
> It would be my opinion that . . . Duncan had reached MMI for his shoulder condition that . . . Duncan will have reached maximum medical improvement for his shoulder condition. I would place the date of maximum medical improvement as of today, Wednesday, January 08, 2025. He will have a 4 [percent] impairment as per my original independent medical evaluation.

As relevant to this appeal, Duncan further offered Exhibit 23, which was a report detailing Duncan's January 2, 2025, follow-up visit with a physician assistant, and which summarized his prior visits. IEA objected to Exhibit 23 based upon Workers' Comp. Ct. R. of Proc. 10 because the notes were signed by a physician assistant, not a doctor. The court overruled IEA's objection, stating that the exhibit was "not a narrative report and does not provide opinions as to causation" and that the court was "not bound by the usual statutory rules of evidence." Exhibit 23 was received into evidence.

COURT'S ORDER

Following the hearing, the court found that Duncan had not reached MMI from his work injury and was entitled to future medical treatment for the work injury to his right shoulder, including, but not limited to, shoulder surgery. The court ordered IEA to continue to pay and provide for such future medical services and treatment as may be reasonably necessary as a result of the work accident, to continue to pay Duncan $855 in weekly TTD benefits, and to pay out-of-pocket medical costs for Duncan's visits to a pain management clinic and associated prescriptions.

The court rejected Dr. Crabb's opinions finding that, during Dr. Crabb's initial evaluation of Duncan in July 2023, prior to the first trial, Dr. Crabb had reviewed Duncan's June 2023 MRI and felt that "[n]one of the findings on the MRI scan . . . necessitate further surgical intervention on the right shoulder." The court also noted that Dr. Crabb previously

> opined [Duncan] had reached MMI as of the date of his [July 10, 2023] examination and sustained a four percent impairment rating. The Court expressly rejected his opinions with respect to the right shoulder and MMI, which findings were not appealed. There is no new evidence, no new or different findings on imaging, or proof of a subsequent injury suffered by [Duncan] to make the [court] discard and overrule its prior findings. Once an issue is litigated and decided in one stage of a case, it should not be relitigated at a later stage of the case. *See, Spratt v. Crete Carrier Corp.*, 311 Neb. 262, 971 N.W.2d 335 (2022).

Regarding the court's determination that Duncan had not yet reached MMI, the trial court found that

[w]hile Dr. Crabb's statement that there is substantial room for complications with yet another surgery did give the undersigned some pause given what it has seen with multiple surgeries, this was not enough to persuade the Court to invalidate its award of future medical. Sufficient evidence has been presented that [Duncan] is not yet at MMI, continues to suffer pain and limitations from the work injury to his shoulder, and is entitled to future medical care for his injury including the shoulder surgery recommended by Dr. Levings.

Nor is the Court . . . persuaded to find [Duncan] has now reached MMI. For the reasons set forth above, the opinions of Dr. Crabb are rejected. [Duncan] was not found to be at MMI. He had stringent restrictions placed upon him by Dr. Levings of a five-pound weight limit and no overhead work. At his most recent visit, Dr. Levings ordered no use of the right arm. . . . These severe restrictions would prevent [Duncan] from returning to work for which he has previous training and experience. He remains temporarily and totally disabled and has been so disabled since September 15, 2020. [IEA] shall immediately reinstate temporary total disability benefits in the amount of $855.00 per week. [IEA] shall also issue payment for any benefits owed from January 8, 2025, when [IEA] suspended disability benefit payments . . . to the date of this Order.

IEA has timely appealed to this court.

## ASSIGNMENTS OF ERROR

IEA assigns as error that the trial court erred in (1) receiving into evidence a medical report signed by a physician assistant, based on Workers Comp. Ct. R. of Proc. 10(A), over a timely and valid objection in contravention of binding Supreme Court caselaw; (2) excluding Dr. Crabb's expert opinions, based on its application of the law-of-the-case doctrine; and (3) finding that Duncan carried his burden of proof that he was entitled to an award of TTD and authorization of medical treatment.

## STANDARD OF REVIEW

An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Prinz v. Omaha Operations*, 317 Neb. 744, 11 N.W.3d 641 (2024).

On appellate review, the factual findings made by the trial judge of the Nebraska Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Id*. In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the appellate court gives the successful party the benefit of every inference reasonably deducible from the evidence. *Id*.

ANALYSIS

RECEIPT OF MEDICAL REPORT SIGNED BY PHYSICIAN'S ASSISTANT

IEA first contends that the trial court erred in receiving into evidence a medical report signed by a physician assistant over counsel's timely objection that the report did not comply with Workers' Comp. Ct. R. of Proc. 10(A).

The exhibit, E23, provided a summary of Duncan's January 2, 2025, 90-day follow-up appointment with a physician assistant. The report summarized both Duncan's current visit and provided brief notes from his prior visits from June 17, 2024; July 15, 2024; September 9, 2024; and November 4, 2024. The report was signed only by the physician assistant.

Rule 10(A) provides, in relevant part:

A signed narrative report by a physician or surgeon, vocational rehabilitation expert, or psychologist setting forth the history, diagnosis, findings and conclusions of the physician or surgeon, vocational rehabilitation expert, or psychologist and which is relevant to the case shall be considered evidence on which a reasonably prudent person is accustomed to rely in the conduct of serious affairs. The Nebraska Workers' Compensation Court recognizes that such narrative reports are used daily by the insurance industry, attorneys, physicians and surgeons and other practitioners, and by the court itself in decision making concerning injuries under the jurisdiction of the court.

The Nebraska Supreme Court has held that a signature by a physician's assistant does not satisfy the requirements of rule 10. *Bower v. Eaton Corp.*, 301 Neb. 311, 918 N.W.2d 249 (2018). Accord *Johnson v. Ford New Holland*, 254 Neb. 182, 575 N.W.2d 392 (1998) (Workers' Compensation Court did not abuse its discretion in refusing to admit into evidence physician assistant's written report that failed to comply with rule 10 because it lacked signature by physician).

But whether Exhibit 23 constituted a signed narrative report covered by Rule 10 is a matter we need not decide. Assuming without deciding that it was an error to admit the document from the physician assistant, there simply was no prejudice as it relates to the central issues in this case. See *Averill v. Omaha Public Schools*, 33 Neb. App. 272, 14 N.W.3d 556 (2024) (holding erroneous admission of evidence is not reversible error unless it unfairly prejudiced substantial right of complaining party).

In short, the report provided a factual summary of multiple visits by Duncan to the physician assistant. The exhibit presents primarily a history of the pain complaints reported by Duncan to the physician assistant on each such occasion and documented the physician assistant's continued attempts at pain management. Notably, the exhibit is devoid of any opinions or conclusions governing the central issues before the court: that is, whether Duncan had reached maximum medical improvement or whether an additional surgery for the persistent pain complaints in his shoulder was reasonable and necessary. The report of Duncan's continuing pain complaints and medication management is simply cumulative of other evidence in the record and IEA does not argue to the contrary. As such, we find that there was no prejudice to the admission of Exhibit 23 as its information did not prejudice a substantial right of IEA. Accordingly, we find that IEA's assigned error fails.

IEA's second assigned error is that the trial court erred in excluding Dr. Crabb's expert opinions based on its application of the law-of-the-case doctrine. Specifically, IEA claims that "Dr. Crabb's subsequent opinions are not the same [as] his reports entered into evidence at [the previous] trial," which renders the law-of-the-case doctrine inapplicable to this case. Brief for appellant at 11.

In *Spratt v. Crete Carrier Corp.*, 311 Neb. 262, 277-78, 971 N.W.2d 335, 346-47 (2022), the Nebraska Supreme Court stated:

> The law-of-the-case doctrine reflects the principle that an issue that has been litigated and decided in one stage of a case should not be relitigated at a later stage. The law-of-the-case doctrine promotes judicial efficiency and protects parties' settled expectations by preventing parties from relitigating settled issues within a single action. Generally, absent extraordinary circumstances, a court should be reluctant to revisit its own prior decision or that of another court in a single case.

> Under the mandate branch of the law-of-the-case doctrine, a decision made at a previous stage of litigation, which could have been challenged in the ensuing appeal but was not, becomes the law of the case; the parties are deemed to have waived the right to challenge that decision. However, an issue is not considered waived if a party did not have both an opportunity and an incentive to raise it in a previous appeal.

But we find IEA's assignment of error misreads the compensation court's order. Here, this case was initially litigated in 2023. During the course of that litigation, IEA's expert, Dr. Crabb, evaluated Duncan on July 10, 2023, and issued a report with his opinions that was received by the court during the 2023 trial. In that report, Dr. Crabb stated that he had reviewed Duncan's June 7, 2023, MRI scan and felt "[n]one of the findings on the MRI scan of June of 2023 necessitate further surgical intervention on the right shoulder." In that July 2023 report, Dr. Crabb opined that Duncan had reached MMI as of July 10, 2023, and sustained a four percent impairment rating.

During the hearing on Duncan's motion to enforce, IEA offered into evidence an updated January 8, 2025, letter from Dr. Crabb, stating that he had reviewed his July 2023 independent medical evaluation of Duncan, notes from Dr. Levings subsequent to that evaluation, and new medical records that included the May 2024 MRI of Duncan's cervical spine. However, Dr. Crabb erroneously noted that the new medical records he reviewed also included the June 2023 MRI of Duncan's right shoulder. But as the compensation court correctly noted, Dr. Crabb had reviewed the same 2023 MRI prior to authoring his opinion in the original 2023 case. In his updated 2025 letter, Dr. Crabb concluded:

> Given [Duncan's] high level of function there is very little room for any improvement and with any surgery at this time <u>and</u> there is substantial room for complications. Nothing in the medical records that has been supplied to me gives me confidence that [another] rotator cuff repair is necessary or even has [a] significant chance of adding value to the outcome.

The compensation court's current order stated that "[c]ontrary to his declaration in Exhibit 32, [Dr. Crabb] had reviewed the June 7, 2023[,] MRI at the time of [the 2023] evaluation and felt

'[n]one of the findings on the MRI scan of June of 2023 necessitate further surgical intervention on the right shoulder.'" The court further stated that it had "expressly rejected [Dr. Crabb's] opinions with respect to the right shoulder and MMI, which findings were not appealed. There is no new evidence, no new or different findings on imaging, or proof of a subsequent injury suffered by [Duncan] to make the [court] discard and overrule its prior findings."

But the compensation court went on to state:

While Dr. Crabb's statement that there is substantial room for complications with yet another surgery did give the undersigned some pause given what it has seen with multiple surgeries, this was not enough to persuade the Court to invalidate its award of future medical. Sufficient evidence has been presented that [Duncan] is not yet at MMI, continues to suffer pain and limitations from the work injury to his shoulder, and is entitled to future medical care for his injury including the shoulder surgery recommended by Dr. Levings.

Nor is the Court . . . persuaded to find [Duncan] has now reached MMI. For the reasons set forth above, the opinions of Dr. Crabb are rejected.

A complete reading of the compensation court's order demonstrates that the court did not exclude the entirety of Dr. Crabb's opinions on the basis of the law-of-the-case doctrine. The compensation court only excluded that portion of the opinion relating to Dr. Crabb's erroneous statement that he did not review the June 2023 MRI, when he had, and any portion of the opinion as it relates to his prior opinion which the court previously rejected. But the compensation court most clearly did consider his additional opinion that without evidence of an additional injury from the 2024 MRI and due to potential complications from an additional surgery, an additional surgery was not warranted. The compensation court simply rejected that opinion in favor of Dr. Leving's opinion that another surgery would provide additional benefit.

Accordingly, we reject IEA's specific assignment of error that the compensation court rejected the entirety of Dr. Crabb's opinions under the law-of-the-case doctrine as it did not reject the entirety of the new opinion on that basis. We find that the compensation court rightly rejected only that portion of the opinion that presented an opinion on old evidence that was rejected before. This assignment fails.

AWARD OF TTD AND AUTHORIZATION OF MEDICAL TREATMENT

IEA's final assigned error is that the trial court erred in finding that Duncan carried his burden of proof that he was entitled to an award of TTD and additional medical treatment. More specifically, IEA argues that the Workers' Compensation Court erred in ordering IEA to pay for the recommended shoulder surgery, pain management, and any recommended treatment because Duncan did not provide evidence that the proposed medical treatments were causally related to the work accident. IEA contends that there was no medical opinion in the admitted evidence that showed that the need for the additional surgery, pain management, or home healthcare was related to the work accident.

The determination of causation is, ordinarily, a matter for the trier of fact. *Vega v. Iowa Beef Processors*, 270 Neb. 255, 699 N.W.2d 407 (2005). In testing the sufficiency of the evidence to support the findings of fact made by the compensation court, the evidence must be considered

in the light most favorable to the successful party. *Id.* As the trier of fact, the compensation court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id.*

Here, there is no dispute that Duncan suffered a shoulder injury which arose out of and in the course of his employment with IEA. At the time of the initial award, Duncan had undergone an MRI in June 2023 which depicted a full-thickness tear of the supraspinatus tendon and a partial-thickness tearing along the medial insertion of the anterior infraspinatus tendon, and there was testimony, as discussed in the court's prior award, that a third surgery might be necessary on Duncan's shoulder. Duncan was still restricted to light duty with no use of his right arm, and his surgeon had not released Duncan from his care and recommended additional treatment related to the work injury. At that time, Dr. Levings recommended a cervical MRI to rule out any other causes of Duncan's shoulder pain. The compensation court's order specifically contemplated the possible necessity of Dr. Levings' conducting a third surgery on Duncan's right shoulder, following a cervical MRI to rule out degenerative cervical spondylosis and to determine whether "a third surgery on the work-injured shoulder is reasonable and necessary." The court specifically stated:

> Additionally, because [Duncan] is not at MMI, has severe restrictions that prevent him from working, has objective findings of injury in his shoulder per the MRI, and may require additional surgery, the Court orders that [IEA] is liable for and shall pay for any future medical care and treatment [Duncan] may incur as a result of the work-related injury to his right shoulder, as long as the proposed medical treatment satisfy the usual foundational elements of being reasonable, necessary, and causally related to the compensable injury.

Following the award of the temporary disability benefits, notwithstanding the court's specific order, IEA denied Duncan's request to pay for the cervical MRI. Duncan eventually underwent the cervical MRI on May 22, 2024, after IEA agreed to pay the costs. The MRI showed that the cervical spine had "no significant protrusions, no significant spinal stenosis or foraminal stenosis" and that the spinal cord had "no abnormal signal."

In a January 2025 appointment, after reviewing the June 2023 MRI and the May 2024 cervical MRI, Dr. Levings recommended surgery to address the rotator cuff tear and noted that the current status of Duncan's condition was worse than his last visit, which occurred in September 2024. He opined that Duncan's "continued pain and weakness was discussed and is due to [his] partial rotator cuff which correlates on his previous MRI" on June 7, 2023. Dr. Levings further noted that Duncan "does continue to have pain, similar to the rotator cuff pain he had with his initial injury. His 4mm tear appears to be easily fixable, and is the cause of his current pain and disability." Based on the record, the 4mm tear, as referenced by Dr. Levings during the January 2025 appointment, is the same 4mm tear referenced by Dr. Levings on June 26, 2023, following the MRI on June 7, 2023; the injury and potential additional surgery were specifically contemplated in the compensation court's initial award; and Dr. Levings opinions were sufficient for the compensation court to conclude that an additional shoulder surgery was reasonable, necessary, and causally related to the original injury. Accordingly, we find that there was sufficient evidence to support the award and find that the compensation court did not err in finding that the recommended treatment and medical care were causally related to the initial work injury. This assignment of error fails.

## CONCLUSION

Having found that IEA's assigned errors fail, we affirm.

AFFIRMED.